## Richmond
CURTIS E. HAWKS

v.

HENRICO COUNTY SCHOOL BOARD

No. 1153-87-2

Decided December 6, 1988

COUNSEL

Lucy H. Allen (Bruce M. Marshall; McCarthy & Durrette, P.C., on brief), for appellant.

James F. Stutts (McGuire, Woods, Battle & Booth, on brief), for appellee.

OPINION

BENTON, J.—We are asked to consider whether the Industrial Commission erred in finding that a March 23, 1984 treating physician's letter to Curtis E. Hawks contained a positive diagnosis of occupational disease and in concluding that Hawks' failure to file until January 12, 1987, bars his claim under Code § 65.1-52. We conclude that the commission's finding that Hawks received a first communication of an occupational disease on March 23, 1984, is supported by credible evidence, and we affirm the decision of the commission.

On March 16, 1984, Hawks visited Dr. Scott Radow with complaints of sinus problems and abnormal breathing. Dr. Radow examined Hawks and reviewed chest x-rays which showed some old nodular and reticular fibrosis. Dr. Radow diagnosed interstitial infiltrates, most likely related to Hawks' inhalation of metal fumes for 40 years, and noted that Hawks utilized lead, steel, iron, tin and aluminum in his welding job, all metals known to produce interstitial infiltrates. Dr. Radow sent the following letter to Hawks on March 23, 1984:

Your x-ray has been reviewed by the radiologist. As we discussed in the office, there is evidence of *scarring in the lungs most likely caused by the different metals you are exposed to on your welding job.* As we discussed in the office, your lung function remains good and there is no treatment necessary for this scarring at the current time. (emphasis added).

Hawks did not file a claim for compensation. On August 12, 1986, complaining of a cough accompanied by small traces of blood, Hawks consulted Dr. Olan Evans. Dr. Evans' records indicate that he believed Hawks' condition to be consistent with mild interstitial scarring associated with his welding job. On a return visit to Dr. Radow on August 22, 1986, Hawks was diagnosed as having "mild chronic bronchitis throughout" with "mild acute bronchitis in the upper left lobe" of the lung. Dr. Radow's report of September 30, 1986 states that Hawks suffered from "? interstitial disease secondary to metal fume inhalation." His notes further state that "Hawks had rather intense bronchitis [;however,] [t]he etiology is not clear." Dr. Radow observed that Hawks' symptoms suggested "perhaps reactive airways disease."

After further testing, Dr. Radow made the following observations in his November 14, 1986, reports:

Impression: 1. Paroxysmal cough. This is clearly work-related historically. The probability is that the patient has interstitial fibrosis secondary to metal fume inhalation. . . .

\* \* \* \*

Chronic cough, most likely diagnosis is industrial bronchitis. The contribution of interstitial disease is uncertain.

Radow then wrote to the school board employee recommending a one month rest period for diagnostic and therapeutic purposes. In this letter he stated:

Mr. Hawks has a paroxysmal cough which is work related historically. There are signs of interstitial lung disease suggestive of disease cause[d] by inhalation of metal fumes. This has resulted in pulmonary disability manifested by paroxysmal cough.

After discontinuing work for one month, Hawks' cough was less frequent and severe, but still unresolved. On January 12, 1987, he applied for a hearing, alleging industrial bronchitis and interstitial fibrosis. At the hearing, counsel for both parties stipulated that Dr. Radow had communicated his diagnosis to Hawks on November 14, 1986. The school board's sole ground of defense was that claimant's condition was a noncompensable ordinary disease of life. The deputy commissioner concluded that Dr. Radow had diagnosed employment-related industrial bronchitis and awarded benefits.

In its request for a review by the full commission, the school board did not challenge the finding that Hawks suffered from an occupational disease, but instead asserted that the award was barred by the statute of limitations. Finding that Dr. Radow's March 23, 1984 letter to Hawks, together with his medical history, established the first communication of occupational disease on that date, the commission held that Hawks was barred from any benefits "resulting from his occupational lung disease or from symptomatic manifestations of such lung disease including bronchitis which may follow as incidents of occupational disease."

Code § 65.1-52 provides that the right to compensation for occupational diseases (other than coal miner's pneumoconiosis, byssinosis or asbestosis) shall be forever barred unless a claim is filed within two years after a diagnosis of the disease is first communicated to the employee. The filing requirement is jurisdictional, *Musick v. Codell Construction Co.*, 4 Va. App. 471, 473, 358 S.E.2d 739, 740 (1987)(citing *Anderson v. Clinchfield Coal Co.*, 214 Va. 674, 675, 204 S.E.2d 257, 258 (1974)), and cannot be satisfied by mere consent or stipulation of the parties. *Stuart Circle Hospital v. Alderson*, 223 Va. 205, 208, 288 S.E.2d 445, 447 (1982). Moreover, the burden is upon the claimant to prove compliance with the statute. *Anderson*, 214 Va. at 675, 204 S.E.2d at 258. It follows, therefore, that the parties' stipulation at the evidentiary hearing that diagnosis and communication of occupational disease first occurred in November, 1986 is not determinative of when the limitation period began to run.

We must therefore consider whether the full commission erred in finding that Dr. Radow's March 23, 1984, letter contained a positive diagnosis of occupational disease. The school board correctly points out that *Kiser v. Clinchfield Coal Co.*, 225

Va. 357, 302 S.E.2d 44 (1983), which contained a communication similar to the one at issue here, controls the disposition of this case. In *Kiser*, the claimant testified that "nine or maybe ten years ago" his doctor informed him "you've got a little [black lung]," but "you don't have the first stage yet." *Id.* at 359, 302 S.E.2d at 45. The claimant was also told at that time that "[t]here is no use in filing now . . . but keep taking x-rays and keep a check at it." *Id.* The Supreme Court held that according to the plain language of the statute, the limitation period began to run upon communication that a work related disease existed, regardless of its severity or compensability. *Id.* at 360, 302 S.E.2d at 46. The claimant was required to file even if the claim would have been dismissed as not yet compensable. *Id.* at 360, 302 S.E.2d at 45; *see also Anderson v. Clinchfield Coal Co.*, 214 Va. at 675, 204 S.E.2d at 258 (claimant who received conflicting diagnoses was obligated to file even if his claim would have been dismissed due to conflicting medical testimony); *Parris v. Appalachian Power Co.*, 2 Va. App. 219, 226, 343 S.E.2d 455, 459 (1986) (where the commission determines that the evidence is insufficient to establish occupational disease, or that the claim is not compensable, claimant is not barred from filing a second claim based upon subsequent diagnosis and communication of occupational disease). Having failed to timely file a claim upon communication of the existence of occupational disease, the claimant in *Kiser* was barred by the statute of limitations. 225 Va. at 360, 302 S.E.2d at 46.

Hawks received a first communication of a work related condition in March, 1984. Based upon the reasoning in *Kiser*, Hawks was under an obligation to file within two years of that date. Dr. Radow based his 1984 diagnosis on an x-ray report, which showed some "old nodular and reticular fibrosis" but no sign of active disease. Dr. Radow's medical report identified the presence of bilateral interstitial infiltrates most likely related to inhalation of metal fumes. His 1984 letter to Hawks communicated in ordinary language the existence of a lung condition "most likely caused by the different metals [Hawks was] exposed to on [his] welding job." As in *Kiser*, Dr. Radow's subsequent statement that "there is no treatment necessary for the scarring at this time" was merely an indication that Hawks had not yet reached the first stage of the disease, a fact relating only to the question of compensability.

■ Hawks argues that communication of "scarring" is not equivalent to communication of the occupational disease interstitial fibrosis. It is true that Dr. Radow did not actually communicate that claimant had interstitial fibrosis. However, a physician is not required to utilize precise medical terminology to communicate the existence of occupational disease in order to trigger the obligation to file a claim. A person receives a diagnosis of occupational disease when he receives a diagnosis that he suffers from a disease that arises out of and in the course of employment. *Garrison v. Prince William County Board of Supervisors*, 220 Va. 913, 917, 265 S.E.2d 687, 689 (1980). In the present case, Hawks was unequivocally told in understandable language that he had a lung condition (scarring) most likely caused by his working conditions as a welder. At a minimum, this was sufficient notice to trigger his legal obligation to file a claim so as to allow the commission to determine whether in fact he suffered from an occupational disease as defined by the statute. *See Parris*, 2 Va. App. at 225-26, 343 S.E.2d at 458-59. Hawks' failure to file upon receipt of this communication deprived the commission of the opportunity to make a finding of occupational disease at that time. The commission's determination on review, however, that notice in 1984 of scarring constituted communication of occupational disease, indicates that it would have so found had the question been timely presented. Hawks was required to file even if the claim would have been dismissed as not yet compensable. *See Kiser*, 225 Va. at 360, 302 S.E.2d at 45.

■ Hawks also argues that the March 23, 1984 letter represents, at best, a tentative diagnosis which was insufficient to commence running of the limitation period. *See Blue Diamond Coal Co. v. Pannell*, 203 Va. 49, 52, 122 S.E.2d 666, 668 (1961)(physician's statement to claimant that he "may" have pneumoconiosis and should therefore be x-rayed was not a communication of a diagnosis sufficient to trigger the limitation period). *Pannell*, however, is distinguishable because the physician clearly conditioned a positive diagnosis of pneumoconiosis on the outcome of further tests. *Id.* at 51-52, 122 S.E.2d at 668. Unlike *Pannell*, Dr. Radow's diagnosis distinctly communicated the causal connection and was not dependent upon subsequent test results. Although Hawks asserts that the March 23 diagnosis is made tentative by the equivocal nature of Dr. Radow's November 14, 1986 notes, these later notes, however, appear to focus on the nature and

source of the symptomatic cough, "whose etiology is not clear." Moreover, the commission has resolved any dispute concerning the construction of medical records in favor of the school board. Where reasonable inferences may be drawn from the evidence in support of the commission's factual findings, they will not be disturbed by this Court on appeal. *See Board of Supervisors of Henrico County v. Taylor*, 1 Va. App. 425, 430-31, 339 S.E.2d 565, 568 (1986).

Finally, Hawks asserts that because the issue was not before the commission on review, the commission erred in finding that bronchitis was a symptomatic manifestation of a previously communicated lung disease. In requesting review pursuant to Rule 2 of the commission's Rules, the school board took exception to the deputy commission's lack of finding that interstitial fibrosis was barred by the statute of limitations. The school board did not challenge the deputy commissioner's finding of industrial bronchitis, but did assert on review that Hawks' cough was associated with interstitial fibrosis. Dr. Radow's November 17, 1986 letter stated that there were "signs of interstitial lung disease" which "resulted in pulmonary disability manifested by paroxysmal cough." Thus, not only was the source of Hawks' symptoms at issue, but there was also credible evidence to support a finding that interstitial lung disease was the source of claimant's pulmonary disability and cough. *See id.*

For the forgoing reasons, the decision of the Industrial Commission is affirmed.

*Affirmed.*

Koontz, C.J., and Moon, J., concurred.