**Richmond**

ANN STAFFORD VIA

v.

CITICORP MORTGAGE, INC., et al.

No. 1433-89-2

Decided July 10, 1990

COUNSEL

Lynn F. Jacob (Williams, Mullen, Christian & Dobbins, on brief), for appellant.

John M. Oakey, Jr. (McGuire, Woods, Battle & Boothe, on brief), for appellee.

OPINION

**KOONTZ, C.J.**—Ann Stafford Via appeals a decision of the Industrial Commission denying her claim for benefits for an illness related to her employment. Via asserts on appeal that the commis-

sion erred in finding that her claim was barred by the statute of limitations under Code § 65.1-52. We find that there was insufficient notice to Via to commence the running of the statute of limitations on the date which the commission ruled that it began to run and that the commission failed to toll the running of the statute of limitations during the period of time Via was incompetent.

We restate the facts only as necessary to explain our decision. Via was employed by Citicorp Mortgage, Inc. (Citicorp) as a business developer in Vienna, Virginia. In October 1984, she was selected to work on a test-pilot program in Maryland upon the insistence of the president of Citibank, Maryland. Although Via pleaded with her manager to send someone else, she was sent to Baltimore. While in Baltimore on this assignment, Via began experiencing nervousness and had difficulty eating and sleeping due to the pressures of her work. When Via returned to work at her office in Vienna at the end of November, she told her supervisor that she was ill and then drove herself to her apartment and collapsed. She subsequently took a leave of absence from work and went to stay with her father and sister in Richmond, Virginia.

In December 1984, Via consulted her family physician, Dr. Sutphin, concerning her problems due to her work. Dr. Sutphin referred her to a psychiatrist, Dr. Brooks, who began seeing Via in January, 1985. On January 18, 1985, Dr. Brooks assisted Via in preparing a note to her employer stating that she was unable to return to work at that time due to problems of fatigue related to her employment. At that time, Dr. Brooks discussed her condition with her and informed her that the diagnosis "lay between Dysthymic Disorder and Major Affective Disorder, depression."

On January 23, 1985, Via was hospitalized due to an apparent suicide attempt and while she was hospitalized she came under the care of Dr. Nalls and Dr. Foster, both psychiatrists. She remained in the hospital until March 1985. On June 3, 1985, Dr. Nalls released Via to return to her employment. At that time, testing indicated that she suffered from significant organic impairment with chronic underlying depression. After working in Citicorp's Richmond office for several months, Via's mental condition deteriorated and she was readmitted to the hospital in November 1985. She was discharged again in December 1985 and returned to work for Citicorp from January 1986 until March 1986, when she permanently left her employment. Since that

time, she has been primarily under the care of Dr. Foster.

In July 1986, Via was involuntarily committed to Westbrook Psychiatric Hospital, where she remained until September 1986. She attempted employment briefly at grocery stores as a checkout clerk in February or March 1987 and again in December 1987 but was unable to cope and went back into the hospital in December 1987. Other periods of hospitalization occurred in January, February, March, October and November 1988.

In February 1988, Via briefly saw another psychiatrist, Dr. Ettigi, who communicated to her the diagnosis of bipolar disorder (also known as manic depressive illness). Dr. Foster stated that he did not communicate this diagnosis to her sooner because he was unsure of the diagnosis and because persons with this condition usually either refuse to accept the diagnosis or become further depressed by it.

Via filed an application for hearing, claiming benefits for the bipolar disorder on August 29, 1988. The deputy commissioner denied her claim on the ground that it had been filed more than two years after Via first became aware that her condition was related to her employment at Citicorp in January 1985. On appeal, the full commission affirmed, finding that Dr. Brooks' note of January 18, 1985 was "a communication of the diagnosis to the employee of a depression disorder coming from her work which was sufficient to commence the statute of limitations" and that there was "no evidence to indicate that she was not capable of acting for herself" up until the time that the statute of limitations had expired.

Via argues on appeal that Dr. Brooks' communication to her that she was suffering from a depression disorder which "lay between Dysthymic Disorder and Major Affective Disorder, depression" was insufficient notice that she was suffering from bipolar disorder and, therefore, the statute of limitations did not begin to run at that time. We agree.

A claimant must file a claim for compensation for an occupational disease (other than coal miners' pneumoconiosis, byssinosis, asbestosis, or infection with human immunodeficiency virus) with the Industrial Commission within two years after a diagnosis of the disease is first communicated to the employee or within five

years from the date of the last injurious exposure in employment, whichever occurs first. Code § .65.1-52(3). The filing of a claim within the limitation period is jurisdictional. *Musick v. Codell Constr. Co.*, 4 Va. App. 471, 473, 358 S.E.2d 739, 740 (1987)(citing *Anderson v. Clinchfield Coal Co.*, 214 Va. 674, 675, 204 S.E.2d 257, 258 (1974)). The burden is on the claimant to prove compliance with the statute. *Anderson*, 214 Va. at 675, 204 S.E.2d at 258. Code § 65.1-46.1 makes ordinary diseases of life compensable in the same manner as occupational diseases if they are sufficiently connected to a claimant's employment. *See Island Creek Coal Co. v. Breeding*, 6 Va. App. 1, 9, 365 S.E.2d 782, 786-87 (1988). In this case, the commission did not reach the issue of compensability because it held that the claim was not filed within the applicable two year limitation period; therefore, we do not address the compensability issue on appeal.

■ The two year limitation period under Code § 65.1-52 begins to run when the claimant receives a positive diagnosis of occupational disease. A tentative diagnosis will not trigger the running of the limitation period. *See Blue Diamond Coal Co. v. Pannell*, 203 Va. 49, 52, 122 S.E.2d 666, 668 (1961)(physician's statement that claimant should be x-rayed because he "may" have pnuemoconiosis did not trigger limitation period). The diagnosis need not contain precise medical terminology as long as the diagnosis is definite and informs the claimant in clear and understandable language that he or she is suffering from a disease that arises out of and in the course of employment. *Hawks v. Henrico County School Bd.*, 7 Va. App. 398, 403-04, 374 S.E.2d 695, 698 (1988). At the time Via was informed by Dr. Brooks that her problems of depression, lack of sleep, tension and anxiety were related to her employment, he had not formed a definite diagnosis of her condition. Although Dr. Brooks told Via that these symptoms were related to her employment, he stated only a preliminary diagnosis that her condition lay somewhere between dysthymic disorder and major depression.

The employer asserts that any diagnosis of a mental disorder is sufficient to start the running of the limitation period. We are not persuaded by this argument. There is no dispute that the correct diagnosis of Via's mental illness is bipolar disorder, mixed (also referred to as manic-depressive illness), which is a relatively rare and severely debilitating long-term illness characterized by exag-

gerated swings in mood from severe depression to elevated states known as manic or hypomanic episodes. *See Diagnostic and Statistical Manual of Mental Disorders* 214-18, 225-26 (3d ed. rev. 1987) (hereinafter *DSM-III-R*). Bipolar disorder is not simply a form of depression; it is a distinct illness. On the other hand, dysthymia and major depression are both depressive disorders, which never involve manic or hypomanic episodes. *DSM-III-R, supra* at 228-33. Dysthymia is a relatively mild form of depression, characterized by chronic depressed mood more days than not for a period of over two years. *Id.* at 230-33. Major depression is a more severe form of depression which lasts at least two weeks and then often goes into complete remission. *Id.* at 228-30. Major depression generally has a better prognosis than bipolar disorder since it is not necessarily a recurring illness. Because Via had no history of a manic episode in January 1985, Dr. Brooks could formulate only a tentative and inaccurate diagnosis that she had some form of depression.

In *Hawks*, we held that a communication to the claimant that he had "scarring in the lungs" from exposure to metals on his welding job was a sufficient communication of diagnosis to trigger the statute of limitations, although the claimant's occupational lung disease was still in its early stages and did not yet require treatment. 7 Va. App. at 402-03, 374 S.E.2d at 697-98. The severity or compensability of an occupational disease is not relevant in determining whether a sufficient communication has occurred to commence the running of the limitation period. *Id.; see also Kiser v. Clinchfield Coal Co.*, 225 Va. 357, 302 S.E.2d 44 (1983); *Anderson v. Clinchfield Coal Co.*, 214 Va. 674, 204 S.E.2d 257 (1974). However, the diagnosis communicated to the claimant should be sufficiently clear and understandable to inform the claimant of the nature of his or her condition so that he or she can accurately file a claim to the Industrial Commission. *See Pannell*, 203 Va. 49, 122 S.E.2d 666. If the claimant in *Hawks* had been incorrectly told that his symptoms of sinus problems and abnormal breathing were due to allergies, he would not have had sufficient notice to be able to file a proper claim for his lung disease. Obviously, the communication of such a diagnosis would not trigger the limitation period for a claim based on the lung disease.

In the present case, Dr. Brooks told Via only that she was suffering from some form of depression. This diagnosis did not pro-

vide her with sufficient notice of the nature of her illness so that she could file a claim based on her bipolar disorder. To hold that a communication of any diagnosis of a mental disorder commences the running of the limitation period for all other types of mental illness would work an unusual hardship on deserving claimants and frustrate the beneficent purpose of the Workers' Compensation Act, which exists to protect employees. *National Linen Serv. v. McGuinn*, 5 Va. App. 265, 270, 362 S.E.2d 187, 190 (1987). We find that Via was not barred under Code § 65.1-52 from filing her claim based on the communication from Dr. Brooks on January 18, 1985.

The employer also argues that there is evidence in the record which indicates that Dr. Foster told Via in June 1985 that she had bipolar illness and the statute of limitations would have expired before she filed her claim if this date were used to determine the commencement of the two year limitations period. Assuming, without deciding, that the limitations period began at this time, the employer's argument rests on the assumption that the limitations period was not tolled by any periods when Via was mentally incompetent. *See Rust Eng'g Co. v. Ramsey*, 194 Va. 975, 76 S.E.2d 195 (1953)(applying former Code § 65-76); Code § 65.1-79. The commission's opinion states that there is no evidence that Via was incapable of acting for herself at any time before the limitations period expired. This finding was apparently based on the fact that, even though Via was hospitalized for certain periods, there were other periods during which she was able to work.

■ The fact that Via was able to work for approximately nine months between January 1985 and August 1988 does not negate the fact that there were numerous periods in this same time span during which she was hospitalized due to her illness. The record reveals that Via was hospitalized more often than she was working during these months. The periods during which she was mentally incompetent should not have been disregarded for purposes of tolling the statute of limitations. A claimant is not required to show that he or she was continuously mentally incompetent during the entire limitations period in order to toll the running of the statute, nor is the claimant required to be committed to a hospital in order to prove mental incompetency. *Ramsey*, 194 Va. at 981-82, 76 S.E.2d at 199-200. The claimant must prove by credible evidence that he or she "did not have sufficient mind or reasoning powers to

comprehend the ordinary affairs of life, or that he [or she] had lost control of his [or her] mental power to such a degree as to deprive him [or her] of sane and normal action" during the alleged period or periods of incompetency. *Id.* at 982, 76 S.E.2d at 199-200. We therefore hold that the commission erred in this regard and remand the case for redetermination of the correct date of a communication of the diagnosis of bipolar disorder and periods of mental incompetency consistent with this opinion.

*Reversed and remanded.*

Benton, J., and Moon, J., concurred.