CHASE PACKAGING CORPORATION and LIBERTY
MUTUAL FIRE INSURANCE COMPANY

v.

MARY A. DORSEY

No. 1781-91-1

Decided October 6, 1992

COUNSEL

Fay F. Spence (Knight, Dudley, Dezern & Clarke, on brief), for appellant.

Steven P. Letourneau (Fine, Fine, Legum & Fine, on brief), for appellee.

OPINION

**BENTON, J.**—Chase Packaging Corporation appeals from a decision granting Mary Alice Dorsey workers' compensation benefits for an occupational disease, bilateral carpal tunnel syndrome. Chase contends that the commission erred: (1) in finding a causal relationship between Dorsey's right carpal tunnel syndrome and her employment, (2) in finding a causal relationship between Dorsey's left carpal tunnel syndrome and her employment, and (3) in not finding that Dorsey's claim of left carpal tunnel syndrome is barred by the statute of limitations contained in Code § 65.1-52(A)(3) (now Code § 65.2-406(A)(5)) or barred by the doctrine of res judicata. We affirm the judgment.

I.

Chase hired Dorsey in 1984 to sew bags. Dorsey first felt pain in her left arm in December 1986 and consulted Dr. W. Palmer Lowery. Dr. Lowery suspected that her pain was work-related, and referred her to Dr. Richard B. McAdam, a neurosurgeon. Dr. McAdam performed a left carpal tunnel syndrome (CTS) release on Dorsey. After noting her complete recovery, Dr. McAdam released Dorsey to her regular job on February 16, 1987. Dorsey filed a claim for workers' compensation benefits for the medical expenses incurred, but this claim was denied by the commission in 1987 after a deputy commissioner determined that Dorsey failed to demonstrate that her injury arose out of a specific, work-related incident.

On September 14, 1989, Dorsey began experiencing sharp pain in her right arm while at work. She reported the pain to her supervisor and was referred to Dr. G.T. Biernacki. Dr. Biernacki treated Dorsey for pain in her right wrist and initially indicated the injury "possibly" was work-related. After x-raying the wrist, Dr. Biernacki noted the possibility of CTS and released Dorsey to return to work on light-duty

status only. Although she was still experiencing pain, Dorsey's symptoms lessened, and she returned to regular work status in January, 1990.

Shortly after returning to regular work status, Dorsey again began experiencing pain in the right arm and sought treatment from Dr. Lowery. Dr. Lowery examined Dorsey and referred her to Dr. Thomas E. Fithian for treatment. Dr. Fithian diagnosed work-related CTS, released Dorsey to light-duty status on February 2, 1990, and instructed her to wear a splint at night. A week later, Dorsey returned to Dr. Lowery because of pain in her left thumb. Dr. Lowery noted the injury was work-related and again referred Dorsey to Dr. Fithian, who diagnosed bilateral CTS "slightly worse on the right than on the left." Dr. Fithian performed a bilateral CTS release on Dorsey. Dorsey returned to regular work status on April 25, 1990.

Dorsey filed a claim with the commission on September 4, 1990, seeking compensation for bilateral CTS and alleging the bilateral CTS was an occupational disease. The deputy commissioner concluded that the claim was barred by the statute of limitations of Code § 65.1-52(A)(3) (now Code § 65.2-406(A)(5)) because Dorsey failed to file her claim within two years of December 1986 or even two years from January 14, 1987, the time she underwent corrective surgery. On review, the commission found no evidence that Dorsey's 1986 injury had any relationship to her condition in 1990 and reversed the statute of limitations ruling. The commission awarded Dorsey all medical expenses related to the CTS and wages for missed worktime.

## II.

Chase argues that no medical opinion established to a reasonable medical certainty that Dorsey's right CTS was causally related to her employment, as required by Code § 65.1-46.1 (now Code § 65.2-401). Chase asserts that Dr. Biernacki found that a causal relationship was "possible," Dr. Lowery found that the cause of Dorsey's disease was "to be determined," and Dr. Fithian's reports recount only that Dorsey "thinks" it was work-related.

The commission found, however, sufficient evidence from which to conclude that Dorsey's injury was causally related to her employment. It found that Dorsey's work involved repetitive arm motion and that she reported a sudden onset of pain to her supervisor on September 14, 1989. The evidence proved that she experienced pain in her right arm

and hand. That her work involved repetitive hand and wrist motions was considered by all her treating physicians and ultimately led to medical tests that indicated that Dorsey was suffering from carpal tunnel syndrome. The commission found that this evidence, along with Dr. Fithian's medical reports of January 2, 1989, and June 22, 1990, specifically relating the injury to her employment, traced the CTS to an incident that occurred when Dorsey was sewing and a sharp pain ran up her right arm.

Factual findings of the commission are conclusive and binding upon this Court if those findings are based on credible evidence. *Fairfax Hosp. v. DeLaFleur*, 221 Va. 406, 410, 270 S.E.2d 720, 722 (1980); Code § 65.1-98 (now Code § 65.2-706). "Whether a disease is causally related to the employment and not causally related to other factors is such a finding of fact." *Island Creek Coal Co. v. Breeding*, 6 Va. App. 1, 12, 365 S.E.2d 782, 788 (1988). Moreover, if reasonable inferences may be drawn from that credible evidence, this Court will not disturb those inferences on appeal. *Hawks v. Henrico County School Bd.*, 7 Va. App. 398, 404, 374 S.E.2d 695, 698 (1988). Credible medical evidence supports the commission's conclusion that the right CTS was causally related to Dorsey's employment.

### III.

Chase argues that the commission also erred in finding that Dorsey's left CTS was causally related to her employment. Chase argues that the only indication that Dorsey was suffering from left CTS appeared in a February 20, 1990 medical report stating that "EMG was positive for bilateral carpal tunnel syndrome, slightly worse on the right than the left," and that no medical opinion stated that the left CTS was causally related to Dorsey's employment. Chase argues that the commission erroneously relied upon Dr. Lowery's report because this report indicates only that he treated her for an injury to her left thumb.

Dr. Lowery's February 11, 1990 report clearly stated that Dorsey's left thumb injury was causally related to her employment. It merely failed to identify the precise nature of Dorsey's thumb injury. Dr. Lowery instructed Dorsey to wear a splint (which is the same treatment prescribed by Dr. Fithian on February 2, 1990 for her right CTS) and instructed her to see Dr. Fithian about this condition if it did not improve. On Dr. Fithian's February 20, 1990, examination of Dorsey, he diagnosed Dorsey with bilateral CTS rather than simply right CTS.

This evidence supports the inference that the left thumb injury, which Dr. Lowery found conclusively to be work-related, was actually a symptom of Dorsey's left CTS.

## IV.

Chase contends that in any event Dorsey's claim for left CTS is barred by the statute of limitations. In support of this argument, Chase claims that Dorsey was first advised that she had left CTS in December 1986 and that she filed a claim with the commission to collect workers' compensation benefits for this disease in 1987. Chase argues that at the February 1, 1991 hearing Dorsey testified that she had never filed a claim with the commission prior to September 4, 1990. Chase asserts it was not informed that this was untrue until this case was appealed before the commission. Chase argues that Dorsey should be estopped from disputing its statute of limitations defense by her conduct in giving false testimony. In the alternative, Chase claims that Dorsey's claim is barred by res judicata because in 1987 Dorsey failed to meet her burden of proving that her left CTS was work-related, and she never appealed this decision.

The record contains abundant evidence that prior to the evidentiary hearing, Chase's counsel knew or reasonably should have known that Dorsey had filed a claim in 1987. Moreover, Chase's claim that Dorsey testified untruthfully at the February 1, 1991 hearing does not survive careful scrutiny of the record. In response to questions asked by Chase's counsel, Dorsey testified that she had been diagnosed with CTS prior to the 1990 diagnosis and that she had been told by her treating physician that the CTS was work-related. Chase's counsel then asked Dorsey the following questions:

Q. Did [Chase] pay you workers' comp?

A. No.

Q. They didn't pay you any?

A. No.

Q. And you never filed a legal claim for compensation at that time, did you?

A. Yes.

Q. You filed a legal claim?

A. Well, not after that.

Q. No. You just asked Chase Packaging to pay you?

A. Yes.

Q. But you never got a lawyer or sent anything to the Industrial Commission directly yourself?

A. No.

The questions posed a confusing issue of "legal claim" and also compounded issues. While Dorsey's responses may have been confusing to counsel, they are not on their face clearly untruthful.

In any event, Chase's argument that Dorsey should be estopped from asserting that she filed for workers' compensation in 1987 is irrelevant because it presupposes a connection between the diagnosis of left CTS made in 1987 and the diagnosis of left CTS made in 1990. The commission, noting that Dorsey's left arm, wrist, and hand symptoms did not recur after the carpal tunnel release surgery she underwent in 1987, found that there was "absolutely no evidence" that Dorsey's prior left CTS was related to the condition for which she was treated in 1990. The commission's finding that the 1990 injury was not related to Dorsey's 1987 injury is a finding of fact that is supported by credible evidence. The medical records prove no connection between the two injuries. Dorsey experienced no pain in her left hand, arm, or wrist for at least two years after her 1987 surgery and was able to resume her former work status without any symptoms of CTS for two years. This evidence credibly supports the commission's finding that there is no connection between the two injuries.

■ Similarly, the doctrine of res judicata does not apply to the circumstances of this case. Res judicata prohibits an action "[w]hen the second suit is between the same parties as the first, and *on the same cause of action." Pickeral v. Federal Land Bank*, 177 Va. 743, 749, 15 S.E.2d 82, 84 (1941) (emphasis added). In that circumstance, "the judgment in the former is conclusive in the latter." *Id.* Since the commission determined that the left CTS Dorsey experienced in 1990 was not related to the 1987 left CTS, the cause of action is not the same.

For these reasons, we affirm the judgment.

*Affirmed.*

Barrow, J., and Moon, J., concurred.