Present:  All the Justices

UNINSURED EMPLOYER'S FUND

OPINION BY JUSTICE A. CHRISTIAN COMPTON

v.  Record No. 971074                    February 27, 1998

HAROLD C. MOUNTS, ET AL.

FROM THE COURT OF APPEALS OF VIRGINIA

In this workers' compensation case, the sole issue at this stage of the appellate process is whether the Uninsured Employer's Fund is liable for payment of compensation for a claimant's occupational disease upon the ground that the claimant's employer violated Code § 65.2-801(A)(1).  The statute, a part of the Workers' Compensation Act, requires every employer to "secure his liability thereunder" by "[i]nsuring and keeping insured his liability" under the Act.

Appellee Harold C. Mounts, the claimant, while working as a coal miner for appellee Greasy Creek Coal Company, the employer, suffered a disabling, compensable back injury in an industrial accident on October 12, 1988.  On that date, the employer was insured by Rockwood Insurance Company, an insurer authorized to transact the business of workers' compensation insurance in the Commonwealth, as required by former Code § 65.1-104.1(A)(1), now § 65.2-801(A)(1).  The claimant stopped working because of the disability, and the insurer began paying benefits.

In August 1991, a Pennsylvania court declared the insurer insolvent, and liquidation proceedings commenced. All persons with claims against the insurer were required to file their claims with the court's liquidator by August 26, 1992.

In August 1991, appellee Virginia Property and Casualty Insurance Guaranty Association, pursuant to Code § 38.2-1606, began paying Mounts' award for the October 1988 accidental back injury because, at the time of the insurer's insolvency, Rockwood had been paying the award. The Guaranty Association, established by statute to "provide prompt payment of covered claims to reduce financial loss to claimants" resulting from an insurer's insolvency, § 38.2-1600, is obligated to pay such claims that existed prior to the insolvency determination. § 38.2-1606(A)(1).

On September 15, 1993, an x-ray report indicated that the claimant was suffering from coal workers' pneumoconiosis. Nine days later, he filed with the Workers' Compensation Commission a claim for benefits for that occupational disease, naming Greasy Creek Coal Company as his last employer.

Subsequently, at a January 1996 hearing, a deputy commissioner found "that claimant received a communication of diagnosis of occupational disease on September 15, 1993." The deputy denied the claim, however, ruling that it was barred by the applicable statute of limitations.

Upon review, the full Commission reversed the deputy's ruling, finding the claim was timely. Turning to the merits, the Commission determined that the date of claimant's last injurious exposure to the hazards of the disease was October 12, 1988, while he was employed by Greasy Creek. The Commission ruled that the claimant's "pneumoconiosis is compensable as an occupational disease" under Code § 65.2-400.

Next, the Commission considered whether the Guaranty Association "is responsible for payment of the claim." The Commission concluded that because the September 1993 claim was filed after the August 1992 deadline established during the liquidation proceedings, the claim was not "covered" and the Guaranty Association was "not responsible for paying benefits to this claimant."

Continuing, the Commission ruled, without assigning a reason, that the Uninsured Employer's Fund "is responsible for this claim." Thus, the Commission entered an award against Greasy Creek and the Fund for payment of disability benefits at the weekly rate of $451 for a period of 50 weeks, plus medical benefits.

The Fund appealed, and a panel of the Court of Appeals unanimously affirmed the Commission. Uninsured Employer's Fund v. Mounts, 24 Va. App. 550, 484 S.E.2d 140 (1997). Among other issues, the Court of Appeals determined that the Fund was

responsible for payment of benefits to the claimant and that the Guaranty Association had no such obligation. Id. at 557, 484 S.E.2d at 143. According to the Court of Appeals, the Fund's liability stemmed from the employer's violation of Code § 65.2-801(A)(1) in failing to keep its liability insured. Greasy Creek was not insured on September 15, 1993, the date the diagnosis was communicated to the claimant.

The Fund filed a petition for appeal in this Court, assigning error to only one of the Court of Appeals' rulings. The Fund's assignment of error states: "The Court of Appeals' reliance upon 'keeping insured his liability' language in § 65.2-801(A)(1) to make the Uninsured Employer's Fund liable for pneumoconiosis benefits is erroneous." Thus, because the Fund does not assign as error the Court of Appeals' holding that the Guaranty Association is not liable for payment of the claimant's benefits, the judgment in favor of the Guaranty Association is final.

Determining that the Court of Appeals' decision involves a matter of significant precedential value within the meaning of Code § 17-116.07(B), we awarded the Fund this appeal from the April 1997 judgment below.

Initially, the relevant workers' compensation statutes must be summarized. Code § 65.2-404 provides that when an employee has a compensable occupational disease, "the employer in whose

4

employment he was last injuriously exposed to the hazards of the disease and the employer's insurance carrier, if any, at the time of the exposure, shall alone be liable therefor, without right to contribution from any prior employer or insurance carrier." The claimant's entitlement to benefits for an occupational disease, however, accrues on the date of the "first communication of the diagnosis." Code § 65.2-403(A), formerly § 65.1-49 (1987 Repl. Vol.); Cooper v. Mary E. Coal Corp., 215 Va. 806, 809, 214 S.E.2d 162, 164-65 (1975).

On the date of this claimant's last injurious exposure to the hazards of pneumoconiosis in October 1988, former Code § 65.1-149(A) (1990 Cum. Supp.) (now § 65.2-1203(A)(2)) provided: "After an award has been entered against an employer for compensation benefits . . . and upon a finding that the employer has failed to comply with the provisions of § 65.1-104.1 . . . the Commission shall order the award, or any unpaid balance, to be paid from the Uninsured Employers Fund." The Fund was created by the General Assembly to provide funds to claimants for benefits awarded against an employer which has breached its duty "to secure compensation insurance." A. G. Van Metre, Jr., Inc. v. Gandy, 7 Va. App. 207, 213, 372 S.E.2d 198, 202 (1988). See § 65.2-1201(A).

In October 1988, former Code § 65.1-104.1(A)(1) (1987 Repl. Vol.), like present § 65.2-801(A)(1), provided that every

5

employer "shall secure his liability" for workers' compensation payments by, among other methods, "[i]nsuring and keeping insured his liability" with an authorized workers' compensation carrier.

The Court of Appeals, in ruling against the Fund, stated:

> "To read Code § 65.2-801 to require only that employers have insurance on the date of the employee's last exposure, and not on the date when the diagnosis of the disease was communicated to the employee, would exempt employers from insuring themselves against a great number of occupational disease claims. Moreover, Code § 65.2-801, by its use of the phrase 'keeping insured,' requires employers to remain insured. Therefore, we hold that because Greasy Creek was not insured on the date the diagnosis was communicated to Mounts, Greasy Creek failed to 'keep[] [itself] insured' as required by Code § 65.2-801."

Mounts, 24 Va. App. at 556, 484 S.E.2d at 143 (alteration in original).

In this appeal, the Attorney General contends, on behalf of the Fund, that by virtue of the language in § 65.1-149 (§ 65.2-1203), Greasy Creek was in compliance with the requirements of § 65.1-104.1 (§ 65.2-801) because it was insured by Rockwood on October 12, 1988. Thus, the Attorney General argues, because the Fund can be responsible for an award only "upon a finding that the employer has failed to comply with the provisions of § 65.1-104.1," this Court should reverse that portion of the award that imposes liability upon the Fund.

6

Continuing, the Attorney General says that the Court of Appeals, in holding the Fund liable, incorrectly "latched onto" the "keeping insured" language in § 65.1-104.1 (§ 65.2-801(A)(1)), while noting the employer was not insured in 1993. He argues that the Court of Appeals' reasoning is flawed because only the carrier that insured the employer's liability on the date of the last injurious exposure can be held liable, in view of the provisions of § 65.2-404.

The Court of Appeals answered this argument by saying that § 65.2-404, by its terms, "addresses only the liability of the employer in whose employment the employee was last injuriously exposed, and its insurance carrier, in contradistinction to prior employers and their insurance carriers." Mounts, 24 Va. App. at 557, 484 S.E.2d at 143. The Court of Appeals stated: "Nothing in Code § 65.2-404 was intended to release employers from the duty of 'keeping [themselves] insured' as required by Code § 65.2-801 or to exempt the Fund when the employer has breached its statutory obligation." Id. (alteration in original).

In a final argument, the Attorney General contends: "The 'keeping insured' language is not meant to require an employer like Greasy Creek to anticipate future pneumoconiosis claims when his carrier is declared

7

insolvent, particularly in the face of the plain wording of § 65.2-404 that makes the employer and carrier on the last date of injurious exposure liable."  We disagree with the Attorney General, and agree with the Court of Appeals.

The "keeping insured" language has been a part of the workers' compensation statutes since the Act was adopted in 1918.  Acts 1918, ch. 400, § 68.  We have observed, as the Court of Appeals correctly held, that the language under scrutiny here means that an employer subject to the Act "must be and remain insured."  Hartford Accident & Indem. Co. v. Fidelity & Guar. Ins. Underwriters, Inc., 223 Va. 641, 643, 292 S.E.2d 327, 328 (1982).

We shall elaborate on the Court of Appeals' analysis to answer one portion of the Attorney General's argument in this Court.  He contends that the statutes do not require an employer to anticipate future pneumoconiosis claims and to remain insured when its insurer has been declared insolvent.  This argument, however, is answered by merely referring to the statute of limitations governing occupational diseases.

An employer has potential liability for a claim of coal miners' pneumoconiosis for "three years after a diagnosis of the disease" is first communicated to the employee, or for "five years from the date of the last

8

injurious exposure in employment, whichever first occurs. . . ."  Code § 65.2-406(A)(1), formerly § 65.1-52(1).  Therefore, given the statutory mandate to insure and keep insured its liability, an employer whose employees are susceptible to pneumoconiosis must anticipate that such claims will accrue in the future and must secure its liability for such potential claims as required by § 65.2-801, even when its insurer has been declared insolvent.  When, as here, there has been a failure to do so, the Fund will be liable because the employer has violated its statutory duty.

Consequently, the judgment of the Court of Appeals will be

<u>Affirmed</u>.