COURT OF APPEALS OF VIRGINIA


Present: Judges Coleman, Elder and Senior Judge Cole
Argued at Salem, Virginia


GREAT EASTERN RESORT CORPORATION AND
 LIBERTY INSURANCE COMPANY
                                            OPINION BY
v.   Record No. 1682-99-3          JUDGE SAM W. COLEMAN III
                                         FEBRUARY 29, 2000
PAMELA GORDON


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Thomas G. Bell, Jr. (Timberlake, Smith,
            Thomas & Moses, P.C., on brief), for
            appellants.

            No brief or argument for appellee.


    Great Eastern Resort Corporation and its insurer, Liberty

Insurance Company, appeal the Workers' Compensation Commission's

decision awarding Pamela Gordon temporary total disability

benefits.  Great Eastern argues the commission erred in finding

that Gordon proved by clear and convincing evidence, as required

by Code § 65.2-401, that her right carpal tunnel syndrome was

caused by her employment.  We disagree and affirm the

commission's decision.

                          BACKGROUND

    On appeal, we view the evidence in the light most favorable

to Gordon, the party prevailing before the commission.  See R.G.

Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d

788, 788 (1990).  So viewed, the evidence proved that Gordon

worked for Great Eastern as a night auditor.  As an auditor, she used her right hand to input the day's revenue and room charges on a machine called a "micro."  The micro is a computerized cash register with a keyboard for entering data and a slot for entering invoices or "folios."

Gordon worked for Great Eastern eight hours per day, three days per week for seven and one-half years.  Gordon testified that she operated the micro between one and three hours per shift, depending on how busy the resort was on a given day.  She testified that due to the set-up of the work station, she was required to place her right hand at a forty-five degree angle while using her fingers to key in the data.  She also fed vouchers and folios into the micro with her left hand.

In January 1997, Gordon first noticed numbness in her fingers and pain in her right wrist.  In January 1998, she sought medical treatment from her regular physician, Dr. Raul Orviedo, for complaints of a herniated disc in her neck.  She also reported wrist pain to Dr. Orviedo, who ordered that she undergo an MRI due to his concern that her symptoms might be related to her neck condition.  After reviewing the MRI, Dr. Orviedo referred claimant to Dr. John A. Jane, Sr., a neurosurgeon.

Dr. Jane opined that the numbness in Gordon's hand and arm was not related to her neck problem and referred Gordon to Dr.

- 2 -

Edward R. Laws, Jr., a neurosurgeon, for another opinion. In a May 22, 1998 letter to Dr. Jane, Dr. Laws diagnosed Gordon with carpal tunnel syndrome. Dr. Laws noted that Gordon's "day-to-day work involves using an instrument called a 'micros' which is a type of computerized cash register. She has repetitive movements that have precipitated and aggravated the carpal tunnel syndrome, with which she presently presents."

On June 23, 1998, after operating on Gordon's right hand, Dr. Laws wrote that "[h]er symptoms developed and became aggravated as she was using . . . an instrument called a micros, which I understand is a computerized cash register. This type of hand problem is commonly associated with this type of repetitive occupational trauma."

Gordon denied engaging in any hobbies or activities outside of her employment involving repetitive movements of her right hand. She admitted she had a long history of smoking two packs of cigarettes per day and stated that she told Dr. Laws' nurse of this history. Gordon denied having been diagnosed with carpal tunnel syndrome before May 1998.

## ANALYSIS

"Whether a disease is causally related to the employment and not causally related to other factors is . . . a finding of fact." Island Creek Coal Co. v. Breeding, 6 Va. App. 1, 12, 365 S.E.2d 782, 788 (1988). We accept the commission's factual findings

when they are supported by credible evidence.  See James v. Capitol Steel Constr. Co., 8 Va. App. 512, 515, 382 S.E.2d 487, 488 (1989).

Since 1997, the Code has provided that "'condition[s] of carpal tunnel syndrome are not occupational diseases but are ordinary diseases of life as defined in [Code] § 65.2-401.'" National Fruit Prod. Co. v. Staton, 28 Va. App. 650, 654, 507 S.E.2d 667, 669 (1998).  For an ordinary disease of life to be compensable, a claimant must prove by "clear and convincing evidence, (not mere probability)" that the disease (1) arose out of and in the course of his employment, (2) did not result from causes outside of the employment, and (3) follows as an incident of an occupational disease, is an infectious or contagious disease contracted in the course of the employment listed in Code § 65.2-401(2)(b), or is characteristic of the employment and was caused by conditions peculiar to the employment.  Code § 65.2-401; see also Lindenfield v. City of Richmond Sheriff's Office, 25 Va. App. 775, 784, 492 S.E.2d 506, 510 (1997).  However, disability resulting from work-related aggravation of a pre-existing disease is not compensable.  See Ashland Oil Co. v. Bean, 225 Va. 1, 3-4, 300 S.E.2d 739, 740 (1983) (per curiam).

> "Clear and convincing evidence has been
> defined as 'that measure or degree of proof
> which will produce in the mind of the trier
> of facts a firm belief or conviction as to
> the allegations sought to be established.
> It is intermediate, being more than a mere

- 4 -

> preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.  It does not mean clear and unequivocal.'"

National Fruit, 28 Va. App. at 654, 507 S.E.2d at 669 (citations omitted).

The employer contends that based on Dr. Laws' reports and opinions Gordon's carpal tunnel syndrome necessarily pre-existed the repetitive motion at work.  The employer reasons that because Dr. Laws stated, "the symptoms developed and became aggravated as she was using . . . an instrument called a micros," and because he used the terminology "precipitated" and "aggravated" to describe the development of Gordon's condition, the condition had to pre-exist in order to be "aggravated" or precipitated.  Thus, the employer argues, relying upon the holding in Ashland Oil, the aggravation of a pre-existing disease is not compensable.  The employer further argues that, at best, Dr. Laws' report as to causation is ambiguous and equivocal and is not sufficient to satisfy the claimant's burden under Code § 65.2-401 of proving by clear and convincing evidence that this ordinary disease of life was causally related to her work.  We find that the commission's decision is supported by credible evidence and that the proof satisfies the clear and convincing standard.

Dr. Laws' opinion and Gordon's testimony constitute credible evidence to support the commission's findings that

- 5 -

Gordon's repetitive motion at work was the cause of her right carpal tunnel syndrome and that the disease did not pre-exist her repetitive motion at work. "Carpal Tunnel Syndrome is defined as: a complex of symptoms resulting from compression of the median nerve in the carpal tunnel, with pain and burning or tingling paresthesias in the fingers and hand, sometimes extending to the elbow." Dorland's Illustrated Medical Dictionary 1289 (26th ed. 1985). Based upon Dr. Laws' statements in his May 22, 1998 and June 23, 1998 letters, the commission reasonably found that "claimant's employment was the 'precipitating' factor which caused [her carpal tunnel syndrome] to 'develop.'" "Precipitate" is defined as "to cause to move or act very rapidly"; "to cause to happen or come to a crisis suddenly or unexpectedly." Webster's Third New International Dictionary 1784 (1993). On this record, the commission could, and obviously did, find that Dr. Laws' use of the terms "precipitated" or "aggravated" did not indicate that Gordon had a pre-existing disease. Rather, the commission found that his use of the terminology described the effect that the repetitive motion at work had upon causing or "precipitating" or "aggravating" the disease process to the median nerve. Significantly, no evidence proved that Gordon had carpal tunnel syndrome or experienced symptoms related to the disease prior to her work and no evidence proved that any causes outside her work

contributed to cause the condition.  Furthermore, no evidence proved that carpal tunnel syndrome is a condition which may lie dormant and only become symptomatic when external aggravating factors are brought to bear.

"Where reasonable inferences may be drawn from the evidence in support of the commission's factual findings, they will not be disturbed by this Court on appeal."  Hawks v. Henrico County Sch. Bd., 7 Va. App. 398, 404, 374 S.E.2d 695, 698 (1988). Based upon Dr. Laws' opinions and Gordon's testimony, the commission, as the trier of facts, could conclude that the evidence proved clearly and convincingly that (1) the repetitive trauma at work caused the right carpal tunnel syndrome and (2) that prior to the repetitive trauma at work, Gordon did not have right carpal tunnel syndrome and did not engage in repetitive activity outside work that caused or contributed to cause the development of this ordinary disease of life.

For these reasons, we affirm the commission's decision.

Affirmed.