COURT OF APPEALS OF VIRGINIA

Present:   Judges Kelsey, McClanahan and Haley
Argued at Chesapeake, Virginia


GWALTNEY OF SMITHFIELD, LTD. AND
   ACE AMERICAN INSURANCE COMPANY

                                                            MEMORANDUM OPINION[*] BY
v.        Record No. 2378-09-1              JUDGE ELIZABETH A. McCLANAHAN
                                                                JUNE 29, 2010

TONY PEELE


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            William W. Nexsen (Jessica A. Johnson; Stackhouse, Nexsen &
            Turrietta, PLLC, on brief), for appellants.

            No brief or argument for appellee.


        Gwaltney of Smithfield, Ltd. and its insurer (collectively "Smithfield") appeal a decision of the

Workers' Compensation Commission awarding medical benefits to claimant, Tony Peele.  Smithfield

contends the commission erred in concluding the statute of limitations did not bar claimant's claim.[1]

For the following reasons, we agree with Smithfield and reverse the commission's decision.

                                            I.  STANDARD OF REVIEW

        Though the question of "whether a claim is barred by the statute of limitations is a

question of law," Tuck v. Goodyear Tire & Rubber Co., 47 Va. App. 276, 284, 623 S.E.2d 433,

437 (2005), "[w]hether a diagnosis of an occupational disease was communicated and when the

communication occurred are factual determinations to be made by the commission" and "will be

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Smithfield also contends the commission erred in concluding claimant's condition was
compensable.  Our holding on the statute of limitations issue makes it unnecessary to decide this
issue.

upheld when supported by credible evidence," Uninsured Employer's Fund v. Mounts, 24

Va. App. 550, 558, 484 S.E.2d 140, 144 (1997) (citations omitted), aff'd on other grounds, 255

Va. 254, 497 S.E.2d 464 (1998).  However, the principal issue raised in this appeal relates not to

the factual findings of the commission, but to its application of the law to those findings.  And

we review *de novo* the commission's application of the law to those findings.  Roanoke Belt, Inc.

v. Mroczkowski, 20 Va. App. 60, 68, 455 S.E.2d 267, 271 (1995).

## II.  ANALYSIS

Claimant filed his initial claim on July 16, 2007, alleging he suffered hand, wrist, and arm

injuries due to his employment.  He later withdrew his claim, filed a new claim on February 25,

2008, and filed an amended claim on July 2, 2008, alleging he suffered an occupational disease of

bilateral carpal tunnel syndrome.[2]

Claimant began having numbness in both of his wrists in 2002 for which he sought medical

treatment from Dr. Melvin Clayton, now retired.[3]  Dr. Clayton told him it was a problem he had at

work and he recommended claimant change to a different job.  In 2006, claimant sought treatment

from Murfeesboro Primary Care (since Dr. Clayton was by then retired) for problems with his right

wrist including numbness in his wrist.  A record dated April 20, 2006, indicates claimant "suffers

---

[2] The Workers' Compensation Act provides that carpal tunnel syndrome is an "ordinary disease[] of life as defined in [Code] § 65.2-401."  Code § 65.2-400(C).  For an ordinary disease of life to be compensable under Code § 65.2-401, claimant must prove by "clear and convincing evidence, (not a mere probability)," that the disease (1) "arose out of and in the course of [his] employment as provided in [Code] § 65.2-400 . . .";  (2) "did not result from causes outside of the employment"; and (3) "follows as an incident of occupational disease . . . [;] is an infectious or contagious disease contracted in the course of [specified types of employment]; or . . . is characteristic of the employment and was caused by conditions peculiar to such employment." Code § 65.2-401.

[3] Dr. Clayton's medical records were not available.  The facts regarding Dr. Clayton's treatment were established by claimant's testimony.

from carpal tunnel syndrome[4] in his right wrist" and "has been experiencing more pain due to specific duties with his job."

Dr. Timothy E. Frei examined claimant on May 23, 2007 and described his condition as numbness and weakness in his arms and hands. Although Dr. Frei noted that claimant "has had a diagnosis of carpal tunnel syndrome in [the] past," he listed the onset of his carpal tunnel syndrome as May 16, 2007, the last date on which claimant worked for Smithfield. According to Dr. Frei, the developing problems with arm numbness in both of his hands "feels to [claimant] similar to the way it has felt in the past." Dr. Frei referred claimant to Dr. Cynthia Lopez who performed an EMG/nerve conduction study on November 14, 2007. Dr. Lopez noted claimant had a five-year history of numbness, tingling, and pain in the hands, which had become worse in the last seven months, and assessed that claimant suffered bilateral carpal tunnel syndrome.[5]

The deputy commissioner found claimant's bilateral carpal tunnel syndrome was caused by his work and awarded medical benefits. After Smithfield requested a review of the deputy commissioner's findings on the issue of whether his claim was barred by the two-year statute of limitations and whether claimant established the compensability of his claim, the commission affirmed the deputy commissioner's opinion. The commission found, "in 2002, the claimant indeed suffered numbness in both wrists, and he understood from medical professionals that he had nerve damage in the left arm." The commission also found that Dr. Clayton told claimant it was a problem he had at work and "wanted him to change his job." But, according to the

---

[4] Carpal tunnel syndrome has been defined as "'a complex of symptoms resulting from compression of the median nerve in the carpal tunnel, with pain and burning or tingling paresthesias in the fingers and hand, sometimes extending to the elbow.'" Great E. Resort Corp. v. Gordon, 31 Va. App. 608, 613, 525 S.E.2d 55, 57 (2000) (quoting Dorland's Illustrated Medical Dictionary 1289 (26th ed. 1985)).

[5] Because Murfeesboro Primary Care, Dr. Frei, and Dr. Lopez did not have the benefit of Dr. Clayton's records, their knowledge of claimant's medical history was necessarily based on information given them by claimant himself.

commission, "no medical professional diagnosed bilateral carpal tunnel syndrome, clearly advised the claimant of this particular diagnosis and causally related it to the claimant's employment."

The claimant's right to compensation "shall be forever barred unless a claim is filed with the commission within . . . two years after a diagnosis of the disease is first communicated to the employee." Code § 65.2-406(A). "The language of the statute is clear and unequivocal. The filing of such a claim within the statutory period is jurisdictional, and the burden is upon the claimant to prove that he complied with the statute." Anderson v. Clinchfield Coal Co., 214 Va. 674, 675, 204 S.E.2d 257, 258 (1974).

In concluding "no medical professional diagnosed bilateral carpal tunnel syndrome" and "clearly advised the claimant of this particular diagnosis," the commission misapplied the law. "[A] physician is not required to utilize precise medical terminology to communicate the existence of occupational disease in order to trigger the obligation to file a claim." Hawks v. Henrico County School Board, 7 Va. App. 398, 403, 374 S.E.2d 695, 697 (1988). "The diagnosis need not contain precise medical terminology as long as the diagnosis is definite and informs the claimant in clear and understandable language that he or she is suffering from a disease that arises out of and in the course of employment." Via v. Citicorp Mortgage, Inc., 10 Va. App. 572, 576, 394 S.E.2d 505, 507 (1990) (citation omitted).

As the commission found, claimant began experiencing problems with both wrists over five years prior to filing his claim and was told by his physician at that time that it was a work-related condition. Claimant's awareness of his condition was corroborated by records from Murfeesboro Primary Care and Dr. Frei noting a history of carpal tunnel syndrome and from Dr. Lopez who noted claimant "had a five-year history of his condition which had become worse

- 4 -

in the last seven months."[6]  In light of these findings and under correct application of the law, the commission could not properly conclude claimant satisfied his burden of proof, complying with the statute of limitations.[7]  Therefore, the commission erred in holding claimant's claim was timely filed.

For these reasons, we reverse the commission's award.

Reversed.

---

[6] We see no appreciable distinction between this case and Hawks, in which an employee sought benefits for interstitial fibrosis caused by inhalation of metal fumes.  The employee received his first communication of a work-related disease by letter from his physician informing him there was evidence of scarring in his lungs most likely caused by his job.  Although the employee argued, "communication of 'scarring' is not equivalent to communication of the occupational disease interstitial fibrosis," the Court noted the employee "was unequivocally told in understandable language that he had a lung condition (scarring) most likely caused by his working conditions as a welder.  At a minimum, this was sufficient notice to trigger his legal obligation to file a claim so as to allow the commission to determine whether in fact he suffered from an occupational disease as defined by the statute."  Hawks, 7 Va. App. at 403, 374 S.E.2d at 697-98.  Similarly, over five years prior to filing his claim, claimant was told by his physician he suffered from a condition (numbness in his wrists and nerve damage in his left arm) caused by his job.  (Indeed, the history recited by his subsequent medical providers specifically indicated a prior diagnosis of carpal tunnel syndrome.)  This was communication of an occupational disease regardless of whether claimant was told his condition was, in medical terminology, "carpal tunnel syndrome."

[7] Despite finding that "in 2002, the claimant indeed suffered numbness in both wrists, and he understood from medical professionals that he had nerve damage in the left arm," the commission was not "persuaded that the claimant received a diagnosis to begin the running of the statute of limitations prior to [May 2007]."  This conclusion suggests the commission improperly placed the burden of proof upon Smithfield to prove claimant was diagnosed prior to May 2007.  See Anderson, 214 Va. at 675, 204 S.E.2d at 258 (burden on claimant to prove he first received diagnosis within the limitation period).