# Richmond

JEWELL RIDGE COAL CORPORATION V. PAUL VANCE.

June 11, 1962.

Record No. 5459.

Present, All the Justices.

*Carl C. Gillespie* (*Gillespie & Gillespie*, on brief), for the appellant.

*Clyde Y. Cridlin* (*Montie S. Meeks*, on brief), for the appellee.

EGGLESTON, C. J., delivered the opinion of the court.

On January 23, 1961, Paul Vance, sometimes hereinafter referred to as the claimant, filed with the Industrial Commission of Virginia a claim for compensation for disability because of silicosis contracted while he was employed by Jewell Ridge Coal Corporation. Jewell Ridge defended the claim on the ground that the claimant had waived his right to compensation benefits on account of silicosis, or any aggravation thereof, by signing a written waiver which had been approved by the Industrial Commission pursuant to Code, § 65-50.

After hearing the evidence the hearing commissioner, in a written opinion, held that the waiver was not a valid bar to the claim because, he said, "the conditions prescribed in Section 65-50 of the Act for the execution of a waiver did not exist at the time the waiver was executed." An award of compensation was entered. On review the majority of the Commission affirmed the award, with Commissioner Nuckols dissenting. We granted the employer a writ of error. The determinative question is whether, under the facts and circumstances to be related, the waiver executed by the claimant and approved by the Industrial Commission was valid and barred the claim for compensation.

On November 23, 1954, Vance applied to Jewell Ridge for re-employment in its coal mines. He had been previously employed by that concern from 1931 to April, 1954, during which period he had been exposed to silica dust while operating a coal cutting machine and a mine motor. Upon seeking re-employment Vance, as well as others, was required to submit to a physical examination by the company physician, Dr. P. E. Ferretti. On the same day the physician reported to the employer that an x-ray of Vance's chest disclosed "Diffuse Fibrosis," and that the applicant "Must sign a waiver." Vance then signed this waiver:

"WAIVER OF OCCUPATIONAL DISEASE COVERAGE UNDER SEC. 2-N.

"Pursuant to the provisions of Sec. 2-N, the undersigned hereby waives the right to claim compensation benefits covering the following physical conditions:

"Silicosis, or any aggravation thereof.

"This 23rd day of November, 1954.

his

"Paul X Vance

mark

"Employee

"Witness:
"M. P. Gilmore

"Jewell Ridge Coal Corporation
"Employer
"M. P. Gilmore
"Personnel Manager"

The waiver carried the notation that it was "Approved by the Industrial Commission on November 30, 1954."

At the hearing Vance, who could neither read nor write, denied

that he had executed the wavier. While Gilmore, the personnel manager who had witnessed Vance's signature, had died prior to the hearing, Billy D. French, who was then employed in the personnel office of the company, testified that he had prepared the waiver and the other papers incident to Vance's re-employment. He testified that he heard Gilmore explain the physician's report to Vance and tell him that according to that report "his chest didn't meet the physical standards" and that "he would have to waive his right to claim compensation for silicosis or any aggravation of it." French further testified that after Vance had deliberated about the matter for more than thirty minutes he signed the waiver and his signature was witnessed by Gilmore.

While Vance contradicted in part the testimony of French, the Commission found as a fact that he executed the waiver under the circumstances related by French, and it is conceded on this appeal that this finding is binding on the claimant. The majority opinion of the full Commission also noted that the waiver had been approved by the Industrial Commission on November 30, 1954.

According to Jewell Ridge's records, Vance worked for that company for one day following his re-employment. He was employed elsewhere until May 16, 1955, when he returned to work for Jewell Ridge and continued this latter employment until August, 1959. On December 6, 1960, a physical examination showed that he was suffering from second-stage silicosis.

Code, § 65-50, provides: "When an employee or prospective employee, though not incapacitated for work, is found to be affected by, or susceptible to, a specific occupational disease he may, subject to the approval of the Industrial Commission, be permitted to waive in writing compensation for any aggravation of his condition that may result from his working or continuing to work in the same or similar occupation for the same employer or for another employer."

The Commission held that there was no evidence that at the time the claimant signed the waiver he was "affected by, or susceptible to," silicosis; that hence the conditions prescribed in the statute for the execution of the waiver were absent and therefore that instrument was invalid.

The employer admits that there is no showing that at the time of the execution of the waiver the claimant was "affected by" silicosis, but insists that the evidence accepted by the Commission as true shows that at that time he was "susceptible to" that occupational disease and was so told.

While the report of Dr. Ferretti did not expressly state that Vance was at that time susceptible to silicosis, that is its clear import. The very purpose of the examination was to determine whether the claimant, who had worked for a great number of years in the coal mines and had been exposed to conditions favorable to the development of silicosis, was "affected by, or susceptible to," that disease. The medical report did not stop with the finding of "Diffuse Fibrosis," which the Commission noted is "a condition to which the general public is exposed and not in itself an occupational disease." It carried the further note of warning to the prospective employer: "Must sign a waiver."

Moreover, as has been said, French testified that Gilmore explained this report to Vance and told him that before being accepted for re-employment he would have to waive his right to "claim compensation for silicosis or any aggravation of it." Thus, the claimant was told the specific disease contemplated in the report. The fact that the claimant considered the matter for a period of more than thirty minutes before signing the waiver, as French said, showed that he fully understood the meaning and purport of the physician's report and the waiver which he signed.

The evident purpose of Code, § 65-50, is to provide conditional employment for those found to be "affected by, or susceptible to," a specific occupational disease and at the same time provide protection for the employer who is willing upon the execution of a waiver to employ such persons. As an added safeguard such waiver is subject to the approval of the Industrial Commission.

In the present case the claimant, being plainly told that his physical examination showed that he was susceptible to silicosis, voluntarily signed the waiver of his "right to claim compensation benefits" for "silicosis, or any aggravation thereof." Relying upon this waiver, approved in the manner required by the statute, Jewell Ridge entered into a conditional contract of employment with the claimant. Contrary to the terms of the waiver the claimant now asserts a claim for compensation.

The Commission erred in awarding compensation under the related circumstances. In doing so, it has, in effect, overturned its prior approval of the waiver and without just cause. There is no suggestion that the execution of the waiver or its approval was procured by fraud. As the dissenting opinion of Commissioner Nuckols aptly says, "To allow recovery in the case at bar is to make a mockery of the statute." Furthermore, it would defeat the purpose of the statute

in encouraging the conditional employment of such persons. For if the employer here cannot rely on this waiver, approved by the Commission in the manner provided in the statute, it can never safely employ or re-employ one who may later become incapacitated by the particular disease specified in the waiver.

We hold that the waiver signed by the claimant and approved by the Commission is valid and effective to bar the award of compensation claimed.

Accordingly, the award is reversed and the claim dismissed.

*Reversed and final judgment.*