COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Annunziata and Senior Judge Duff
Argued at Richmond, Virginia


UNINSURED EMPLOYER'S FUND
                                         OPINION BY
v.  Record No. 2116-96-3         JUDGE JAMES W. BENTON, JR.
                                        APRIL 22, 1997
HAROLD C. MOUNTS,
 GREASY CREEK COAL COMPANY AND
 VIRGINIA PROPERTY AND CASUALTY
 INSURANCE GUARANTY ASSOCIATION


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

        John J. Beall, Jr., Senior Assistant Attorney
        General (James S. Gilmore, III, Attorney
        General; Richard L. Walton, Jr., Senior
        Assistant Attorney General; James W. Osborne,
        Assistant Attorney General, on briefs), for
        appellant.

        Vincent J. Carroll for appellee Harold C.
        Mounts.

        Dabney J. Carr, IV (Mays & Valentine, L.L.P.,
        on brief), for appellee Virginia Property and
        Casualty Insurance Guaranty Association.

        No brief or argument for appellee Greasy
        Creek Coal Company.


    The Uninsured Employer's Fund appeals from a ruling of the

Workers' Compensation Commission requiring the employer, Greasy

Creek Coal Company, and the Fund to provide Harold C. Mounts

disability benefits based on first stage pneumoconiosis.  The

Fund contends that because Greasy Creek was insured as required

by Code § 65.2-801 when Mounts was last injuriously exposed to

coal dust, the commission erred in ruling that the Fund was

liable for Mounts' disability.  The Fund also contends that even

if it is liable, Mounts is barred from making this claim because he received a diagnosis of pneumoconiosis in 1984, nine years before he filed his claim.  For the reasons that follow, we affirm the award.

I.

This matter initially was heard by a deputy commissioner without the inclusion of the Fund as a party.  At the conclusion of those proceedings, the commission issued an opinion holding the Fund liable for paying Mounts' benefits.  When the Fund learned of the award, it filed a motion for reconsideration because it had not been made a party to the proceedings.  The commission vacated its award and remanded the case for a new hearing with all of the parties properly joined.

The evidence before the deputy commissioner at the second hearing proved that Mounts sought employment in 1984 with James Estep, a contractor who supplied workers for United Coal Corporation.  United required Estep's employees to have a pre-employment physical examination.  Mounts testified that after he was examined at a hospital, he asked the man who interpreted the x-rays, "what did my x-rays show . . . ?"  Mounts testified that the man answered, "nothing."  Mounts further testified that he did not know whether the man was a doctor.

The examination form that was prepared at the hospital and dated July 30, 1984 states that the x-ray indicated "possible pneumoconiosis."  Mounts took the forms to the United personnel

office after the examination. While he was at the personnel office, Mounts signed employment documents, including a form that states above his signature, "the undersigned hereby waives the right to claim compensation benefits covering . . . occupational pneumoconiosis." Mounts testified that he signed the forms because he was told that he had to do so to be employed and that he was unaware that he was signing a waiver. Mounts also testified that he only completed five years of schooling and is unable to read. Mounts was employed by Estep and worked in United's coal mines.

Lois Gillespie, a United employee, testified that although she witnessed Mounts' signature on the waiver card, she did not remember Mounts. Gillespie testified that the purpose of the waiver was to bar "black lung" claims against Estep. She also testified that her "personal policy" was to tell potential employees, such as Mounts, "that they had a positive diagnosis for black lung, that [the form] was a waiver[, and] that if they signed they could not file for . . . black lung against the company they were going to work for." Gillespie testified that if a potential employee would not sign the form, Estep would not hire that person. Gillespie also testified that her records did not indicate that the waiver had been approved by the commission.

After Mounts' employment in United's mines ended, he was employed by Greasy Creek Coal Company. Mounts suffered a work-related injury to his back on October 12, 1988 while working

for Greasy Creek and stopped working because of that disability. Greasy Creek was Mounts' last employer.

On August 16, 1991, a court in Pennsylvania declared insolvent Greasy Creek's workers' compensation insurance carrier, Rockwood Insurance, and appointed a liquidator. The liquidator gave notice that all creditors and other interested persons were to assert their claims before August 26, 1992.

Alleging that on September 15, 1993 he received a diagnosis of pneumoconiosis, Mounts filed with the commission on September 24, 1993 a claim for benefits against Greasy Creek for an occupational disease. Mounts notified Virginia Property and Casualty Insurance Guaranty Association, the statutory association established to provide protection when insurance companies are insolvent, see Code § 38.2-1600, that he was filing for benefits for pneumoconiosis. The Association informed Greasy Creek that it was "unable to offer a defense on [Greasy Creek's] behalf" because Mounts' claim for benefits was not filed within the one-year deadline for filing claims with the liquidator against Rockwood, the insolvent insurance carrier. See Code § 38.2-1606(A)(1)(ii).

Based on this evidence, the deputy commissioner found that even though Mounts testified that he could not read the waiver form and was not informed that the waiver said he had pneumoconiosis, Mounts' signature on the 1984 waiver established that he received a communication of the diagnosis of

pneumoconiosis. Thus, the deputy commissioner ruled that Mounts' claim was barred by the statute of limitations. Mounts requested a review. The Association also filed a request for review to protect its defense that it could not be held liable.

On review, the commission found that the waiver form had not been filed with the commission as required by Code § 65.2-407 and that Mounts had not been told that he had an occupational disease when he signed the form. The commission also found that Mounts received his first communication that he had pneumoconiosis in 1993 and that the evidence proved that Mounts had the disease. Thus, the commission reversed the deputy commissioner's ruling, granted Mounts benefits, and ruled that the Fund was required to pay the benefits.

## II.

The Fund disputes the commission's finding that the Fund is liable for Mounts' claim. It argues that because Greasy Creek was insured on the date of Mounts' last exposure to the hazardous substance, Greasy Creek met the requirements of Code § 65.2-801. Therefore, the Fund argues, it cannot be held liable under Code § 65.2-1203(A).

> Code § 65.2-1203(A) provides as follows:
> Whenever, following due investigation of a claim for compensation benefits, the Commission determines that (i) the employer of record has failed to comply with the provisions of § 65.2-801 . . . . , and (ii) the claim is compensable, the Commission shall . . . order payment of any award of compensation benefits pursuant to this chapter from the Uninsured Employer's Fund.

- 5 -

Id.  Code § 65.2-801 provides, in relevant part, as follows:

> A.  Every employer subject to this title shall secure his liability thereunder by one of the following methods:
>
> > 1.  <u>Insuring and keeping insured</u> his liability in an insurer authorized to transact the business of workers' compensation insurance in this Commonwealth . . . .

Id. (emphasis added).

To read Code § 65.2-801 to require only that employers have insurance on the date of the employee's last exposure, and not on the date when the diagnosis of the disease was communicated to the employee, would exempt employers from insuring themselves against a great number of occupational disease claims.  Moreover, Code § 65.2-801, by its use of the phrase "keeping insured," requires employers to remain insured.  Therefore, we hold that because Greasy Creek was not insured on the date the diagnosis was communicated to Mounts, Greasy Creek failed to "keep[] [itself] insured" as required by Code § 65.2-801.

The Fund also contends that because the employer was insured on the date of the last exposure, Code § 65.2-404 exempts the Fund from liability.  The Fund argues that only the insurance carrier that insured the employer's liability when the last injurious exposure occurred can be held liable.  We disagree. Code § 65.2-404 states that "the employer in whose employment [the employee] was last injuriously exposed to the hazards of the disease and the employer's insurance carrier, if any, at the time

- 6 -

of the exposure, shall alone be liable . . . , without right to contribution from any prior employer or insurance carrier."  By its terms, Code § 65.2-404 addresses only the liability of the employer in whose employment the employee was last injuriously exposed, and its insurance carrier, in contradistinction to prior employers and their insurance carriers.  Code § 65.2-404 identifies the employer that is to be held liable and excludes prior employers from liability.  See Cooper v. Mary E. Coal Corp., 215 Va. 806, 214 S.E.2d 162 (1975).  Nothing in Code § 65.2-404 was intended to release employers from the duty of "keeping [themselves] insured" as required by Code § 65.2-801 or to exempt the Fund when the employer has breached its statutory obligation.

Accordingly, we hold that the commission properly ruled that the Fund was responsible for payment of benefits to Mounts.  "The purpose of the Fund is to insure that injured employees will be paid their compensation benefits even though their employer has breached his duty [under Code § 65.2-801]."  A.G. Van Metre, Jr., Inc. v. Gandy, 7 Va. App. 207, 213, 372 S.E.2d 198, 202 (1988).

The Fund further argues that under the circumstances of this case, the statutes vest in the Virginia Property and Casualty Insurance Guaranty Association the obligation to pay the benefits.  We disagree.  The General Assembly created the Association to "provide prompt payment of covered claims to reduce financial loss to [any person instituting a liability

claim] or policyholders resulting from the insolvency of an insurer." Code § 38.2-1600; see also Code § 38.2-1602. The Association's duties and powers are explicitly defined by statute. See Code § 38.2-1606.

The statutory scheme requires the Association to pay "[t]he full amount of a covered claim for benefits under a workers' compensation insurance coverage." Code § 38.2-1606(A)(1)(i). However, that statutory duty is limited by the proviso that "[n]otwithstanding any other provision of this chapter, a covered claim shall not include any claim filed with the . . . Association after the final date set by the court for the filing of claims against the liquidator or receiver of an insolvent insurer." Code § 38.2-1606(A)(1)(ii). The legislation that created the Association, "considered as a whole, clearly indicates that the General Assembly did not intend . . . the Association . . . [to be] merely a solvent substitute for an insolvent insurance company." Virginia Property and Cas. Ins. Guar. Ass'n v. International Ins. Co., 238 Va. 702, 703, 385 S.E.2d 614, 616 (1989).

When the Pennsylvania court declared Rockwood to be insolvent, the court-appointed liquidator set August 26, 1992 as the last date for filing claims. The evidence proved that Mounts' claim for benefits was not filed until 1993. Clearly, the Association was barred by statute from considering Mounts' claim to be "a covered claim," Code § 38.2-1606(A)(1)(ii), and

was not authorized to pay benefits.  Accordingly, we hold that the commission properly ruled that the Fund, not the Association, was liable for payment of Mounts' claim.

## III.

The Fund next argues that Mounts received a communication of his diagnosis in 1984 and that, therefore, his claim is barred by the statute of limitations because it was not filed until 1993. We disagree.

Whether a diagnosis of an occupational disease was communicated and when the communication occurred are factual determinations to be made by the commission upon the evidence. See Roller v. Basic Constr. Co., 238 Va. 321, 329, 384 S.E.2d 323, 326 (1989).  Upon appellate review, the findings of fact made by the commission will be upheld when supported by credible evidence.  See James v. Capitol Steel Constr. Co., 8 Va. App. 512, 515, 382 S.E.2d 487, 488 (1989).

Viewed in the light most favorable to Mounts, who prevailed before the commission, see Fairfax County v. Espinola, 11 Va. App. 126, 129, 396 S.E.2d 856, 858 (1990), the evidence proved that the pre-employment physical examination form that Mounts received after his examination in the hospital indicated only "possible pneumoconiosis."  An opinion that an employee "may have pneumoconiosis," Blue Diamond Coal Co. v. Pannell, 203 Va. 49, 51, 122 S.E.2d 666, 668 (1961), is not a positive diagnosis of an occupational disease because it "would indicate that claimant

- 9 -

might or might not have had pneumoconiosis." Id. at 52, 122 S.E.2d at 669. Such a diagnosis is "not sufficiently definite to apprise [an employee] that he had contracted the disease." Id. Consequently, we hold that this "tentative diagnosis will not trigger the running of the limitation period." Via v. Citicorp Mortgage, Inc., 10 Va. App. 572, 576, 394 S.E.2d 505, 507 (1990).

Even if the medical forms had been more definite, credible evidence supports the commission's ruling that Mounts did not receive a communication of pneumoconiosis in 1984. When Mounts was examined at the hospital prior to being employed by Estep, he received an x-ray and inquired about it. Mounts testified that when he asked the man who interpreted his x-ray what the x-ray showed, the man said it showed "nothing." As the trier of fact, the commission determined the weight of this evidence and the credibility of the witness. See Goodyear Tire & Rubber Co. v. Pierce, 5 Va. App. 374, 381, 363 S.E.2d 433, 437 (1987). Because the commission accepted Mounts' testimony, credible evidence supports its finding. See id.

The evidence also proved that Mounts cannot read. Although Mounts signed a form indicating that he "waiv[ed his] right to claim compensation benefits . . . [for] pneumoconiosis," Mounts was told that he had to sign the employment forms to obtain work. Gillespie, the personnel employee who witnessed Mounts' signature, testified that she had no memory of Mounts because she witnessed forms for thousands of prospective employees. The

commission was not required to believe that, because she said her personal policy was to explain the forms, she did so in this instance. The commission accepted Mounts' testimony that she did not explain the forms to him. See id.

Citing Jewell Ridge Coal Corp. v. Vance, 203 Va. 557, 125 S.E.2d 879 (1962), the Fund contends that, as a matter of law, Mounts' illiteracy "has no impact on the effectiveness of the communication of the knowledge imparted by the written report." We disagree with the Fund's interpretation of Vance. Although Vance "could neither read nor write," id. at 558, 125 S.E.2d at 880, a witness testified that he heard a personnel office employee explain the physician's report to Vance, tell Vance that his chest examination was below the required physical standards, and inform Vance that Vance "'would have to waive his right to claim compensation for silicosis or any aggravation of it.'" Id. at 559, 125 S.E.2d at 880. The witness testified that Vance deliberated for more than thirty minutes and then signed the waiver. See id. On this evidence, the Court held that "the Commission found as a fact that [Vance] executed the waiver under the circumstances related by [the witness], and . . . this finding is binding on [appeal]." Id. at 559, 125 S.E.2d at 881 (emphasis added).

Although Mounts, like Vance, could not read, unlike in Vance, the commission found from the evidence in this case that the forms were not orally explained to Mounts. Nothing in Vance

holds that an employee who is unable to read shall be presumed to know the contents of a document merely because the employee signed the document. The commission found that Mounts was not told that he had an occupational disease when he signed the documents. Obviously, when the commission accepted Mounts' version of the events it accepted as true that neither the person who interpreted Mounts' x-rays nor Gillespie informed Mounts of a diagnosis of pneumoconiosis. Where "'reasonable inference[s may] . . . be drawn from [the] evidence to support the Commission's [factual] findings, they will not be disturbed by this Court on appeal.'" Board of Supervisors v. Taylor, 1 Va. App. 425, 431, 339 S.E.2d 565, 568 (1986) (citation omitted). Thus, credible evidence supports the commission's findings that Mounts was unable to read the information on the waiver form and that he was not informed of the import of the information on the form. Accordingly, those findings are binding on this appeal. See James, 8 Va. App. at 515, 382 S.E.2d at 488.

Gillespie testified that her records did not reveal that the waiver had been approved by the commission. Based upon that evidence, the commission properly found that the waiver form was not filed with the commission or approved by the commission as required by Code § 65.2-407. Accordingly, the waiver has no affect on Mounts' claim for benefits.

Credible evidence in the record proved that Mounts received a definite communication of pneumoconiosis on September 15, 1993.

Accordingly, Mounts' September 24, 1993 application was not barred by the statute of limitations.  Furthermore, credible evidence supports the commission's finding that Mounts sustained first stage coal workers' pneumoconiosis.  Accordingly, we affirm the award.

<u>Affirmed</u>.