COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Coleman and Bumgardner
Argued at Richmond, Virginia


THE UNINSURED EMPLOYER'S FUND
                                            OPINION BY
v.  Record No. 1521-97-3        JUDGE JAMES W. BENTON, JR.
                                          APRIL 21, 1998
ALFRED L. FLANARY, MOOSE COAL COMPANY
 AND THE VIRGINIA PROPERTY AND
 CASUALTY INSURANCE GUARANTY ASSOCIATION


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            John J. Beall, Jr., Senior Assistant Attorney
            General (Richard Cullen, Attorney General;
            James W. Osborne, Assistant Attorney General,
            on brief), for appellant.

            Michael F. Blair (Penn, Stuart, Eskridge &
            Jones, on brief) for appellee The Virginia
            Property and Casualty Insurance Guaranty
            Association.

            No brief or argument for appellees Alfred L.
            Flanary and Moose Coal Company.



        The Uninsured Employer's Fund appeals from a ruling of the

Workers' Compensation Commission requiring the Fund and Moose

Coal Company to pay an award of lifetime benefits to Albert L.

Flanary, a former employee of Moose Coal.  The Fund contends the

commission erred in failing to apportion the award between the

Fund and the Virginia Property and Casualty Insurance Guaranty

Association, which was statutorily obligated to pay the "covered

claims" of one of Moose Coal's insolvent insurers.  The Fund also

contends that because Moose Coal was insured when Flanary was

first awarded benefits, the commission erred in holding that the

Fund was liable for Moose Coal's other insurer's portion of the

award after that insurer also became insolvent.  For the reasons that follow, we affirm the award.

I.

Albert Flanary filed a claim with the Workers' Compensation Commission on February 20, 1990, alleging an occupational disease.  The evidence at the hearing proved that Flanary worked as a coal miner for Moose Coal Company until November 6, 1986.  During Flanary's final ninety work shifts, Moose Coal was insured by Virginia Coal Producers Group Self-Insurance Association for eighty-five of those work shifts and Rockwood Insurance Company for the remaining five work shifts.  On December 23, 1989, Flanary was informed that he suffered from stage three coal-workers' pneumoconiosis.

Following an evidentiary hearing, the deputy commissioner found that Flanary had contracted stage three coal-workers' pneumoconiosis as a consequence of exposure to coal dust while employed by Moose Coal.  The deputy commissioner awarded Flanary weekly compensation disability benefits commencing December 23, 1989 and continuing for 300 weeks until September 22, 1995.  The deputy commissioner prorated the award, finding the Coal Producers Group liable for 85/90ths of the award and Rockwood Insurance liable for the other 5/90ths.

The Coal Producers Group, which was insolvent when the commission made the award, did not pay any portion of the award.  Instead, by order of the commission, the Coal Producers Group's

liability for 85/90ths of the award was paid by the Fund pursuant to Code § 65.2-1203(A).  Rockwood Insurance paid its portion of the award as a lump sum.  However, after Rockwood Insurance made its payment, it too became insolvent.  Although the Virginia Property and Casualty Insurance Guaranty Association would have been obligated to pay "covered claims" against Rockwood Insurance pursuant to Code § 38.2-1606, the Guaranty Association made no payments of weekly disability benefits to Flanary because Rockwood Insurance had paid its portion of the award prior to its insolvency.

On August 22, 1996, Flanary filed with the commission a claim for benefits alleging a change in condition and seeking an award of lifetime benefits.  See Code § 65.2-504(A)(4).  The deputy commissioner found that Flanary had proved a change in condition and awarded him lifetime benefits commencing on September 23, 1995.  The deputy commissioner also ruled that liability for that award would not be apportioned between the Fund and the Guaranty Association because the commission "cannot enter any award against the Guaranty [Association] until all benefits from this claim from the . . . Fund are exhausted."

Finding that Flanary had proved a change in condition and that the award could not be prorated between the Fund and the Guaranty Association, the commission affirmed the deputy commissioner's award.  The commission relied upon Code § 38.2-1610 to support its ruling that the Guaranty Association

"becomes liable only in the event that the . . . Fund does not fully satisfy the award."  The Fund appeals this decision.

                                    II.

The Guaranty Association was established to "provide prompt payment of covered claims to reduce financial loss to claimants or policyholders resulting from insolvency of an insurer," to "assist in the detection and prevention of insurer insolvencies," and to "apportion the cost of this protection among insurers." Code § 38.2-1600.  The Supreme Court has noted that the statutes limit the obligations of the Guaranty Association.

> [T]he General Assembly did not intend that the [Guaranty] Association merely "step into the shoes" of the insolvent insurer. Establishment of the [Guaranty] Association affords a mechanism for the timely payment of appropriate claims to avoid financial loss to certain classes of people.  But it is not merely a solvent substitute for an insolvent insurance company.

Virginia Property & Cas. Ins. Guaranty Ass'n v. International Ins. Co., 238 Va. 702, 705, 385 S.E.2d 614, 616 (1989).  Thus, although the Guaranty Association was created as an "insurer of last resort," its obligations are limited by, among other things, the "exhaustion requirement and set-off provisions contained in [Code § 38.2-1610]."  Id. at 704-05, 385 S.E.2d at 616.

> In pertinent part, Code § 38.2-1610 provides as follows:
> A.  Any person having a claim against an insurer under any provision in an insurance policy, other than a policy of an insolvent insurer under which the claim is also covered, shall be required to first seek recovery under the policy covered by the insurer which is not insolvent.  Any amount

                                  - 4 -

payable on a covered claim under this chapter shall be reduced by the amount of any recovery under the insurance policy.

A1.   Any person having a claim or legal right of recovery under any governmental insurance or guaranty program which is also a covered claim, shall be required to exhaust first his right under such program.  Any amount payable on a covered claim under this chapter shall be reduced by the amount of any recovery under such program.

B.    Any person having a claim that may be recovered under more than one insurance guaranty association or its equivalent shall seek recovery first from the association of the state where the insured resides.  However, if it is a first party claim for damage to property with a permanent location, the insured shall seek recovery first from the association of the state where the property is located.  For a workers' compensation claim recovery shall first be sought from the association of the state where the claimant resides.  Any recovery under this chapter shall be reduced by the amount of the recovery from any other insurance guaranty association or its equivalent.

The Fund argues that the language "governmental insurance or guaranty program" in Code § 38.2-1610(A1) refers to guaranty associations in other states or those governmental insurance programs in other states that have been set up in lieu of a guaranty association.  We disagree.  Nothing in Code § 38.2-1610(A1) requires such a limited reading.  Indeed, the statutory language refutes the Fund's contention.  Code § 38.2-1610(B) establishes an exhaustion procedure whenever a claim is covered by more than one insurance guaranty association, including those in other states.  The interpretation suggested by

the Fund would render subsections (A1) and (B) redundant.  "The rules of statutory interpretation argue against [such a] reading [of] any legislative enactment."  Jones v. Cornwell, 227 Va. 176, 181, 314 S.E.2d 61, 64 (1984).

The Fund also argues that it is not a "governmental insurance or guaranty program" as contemplated by Code § 38.2-1610(A1).  We disagree.  The Fund was created "[f]or the purpose of providing funds for compensation benefits awarded against any uninsured or self-insured employer under the provisions of this chapter."  Code § 65.2-1201.  To finance the program, the enabling legislation that created the Fund provides that a tax shall be assessed, collected and paid into the state treasury by "[e]very person, partnership, association, corporation, . . . company, mutual company or association, the parties to any interindemnity contract or reciprocal plan or scheme, and every other insurance carrier, insuring employers in this Commonwealth against liability for personal injuries to their employees or death caused thereby."  Code § 65.2-1000.  The commission is authorized to "order payment of any award of compensation benefits . . . from the . . . Fund" when the commission determines that an employer has failed to acquire the requisite workers' compensation insurance or cannot satisfy a compensable claim in whole or in part.  Code § 65.2-1203(A). This Court has held that the "purpose of the Fund is to insure that injured employees will be paid their compensation benefits

even though their employer has breached his duty to secure compensation insurance." A.G. Van Metre, Jr., Inc. v. Gandy, 7 Va. App. 207, 213, 372 S.E.2d 198, 202 (1988).

The Fund, a statutorily created entity financed by taxes levied upon insurers, functions as a workers' compensation insurer of last resort under the limited circumstances described in the statute, i.e., when an employer fails to be suitably insured as required by Code § 65.2-801 or otherwise fails to satisfy a compensable claim. See Code § 65.2-1203(A). See also Gandy, 7 Va. App. at 213-14, 372 S.E.2d at 202 ("The purpose of the Fund is to insure that injured employees will be paid their compensation benefits even though their employer has breached [its] duty to secure compensation insurance."). Upon payment of a claim, the Fund is statutorily "subrogated to any right to recover damages which the injured employee . . . or any other person may have against . . . [the] employer or any other party." Code § 65.2-1204. In addition, the statute permits the Attorney General to "defend any claim against the . . . Fund." Code § 65.2-1202.

Under these statutorily defined circumstances, the Fund pays an award to an injured employee much like a workers' compensation insurer. Because the Fund characteristically exhibits indicia of a "governmental insurance or guaranty program" of limited purpose, Code § 38.2-1610(A1), the commission properly ruled that the award of lifetime benefits to Flanary should not be prorated

between the Guaranty Association and the Fund. The Fund falls within the statutory purview of those entities from which recovery must be exhausted before the Guaranty Association is required to make payments. Thus, the commission did not err in ruling that the Guaranty Association only becomes liable for payment in the event the Fund is unable to fully satisfy the award.

III.

The Fund also contends the commission erred when it ordered the Fund to pay the portion of the award that was originally assessed against Rockwood Insurance. The Fund argues that, because Rockwood Insurance was solvent on the date Flanary was first awarded weekly compensation benefits and became insolvent only after that award was entered, Moose Coal met the requirements of Code § 65.2-801.

Code § 65.2-801(A) provides, in relevant part, as follows:

> Every employer subject to this title shall secure his liability thereunder by one of the following methods:
>
> 1. Insuring and keeping insured his liability in an insurer authorized to transact the business of workers' compensation in this Commonwealth . . . .

Pertinent to this issue, Code § 65.2-1203(A) provides as follows:

> Whenever, following due investigation of a claim for compensation benefits, the Commission determines that (i) the employer of record has failed to comply with the provisions of § 65.2-801 . . ., and (ii) the claim is compensable, the Commission shall . . . order payment of any award of

compensation benefits pursuant to this
chapter from the Uninsured Employer's Fund.

The Fund concedes that this issue is governed by Uninsured Employer's Fund v. Mounts, 24 Va. App. 552, 484 S.E.2d 140 (1997), aff'd, ___ Va. ___, ___ S.E.2d ___ (1998).  In Mounts, the employer was insured on the date of the employee's last injurious exposure but not on the date when the diagnosis of the disease was communicated to the employee.  The Fund argued that under those circumstances the employer was "insured" within the meaning of Code § 65.2-801 and, therefore, the Fund could not be held liable under Code § 65.2-1203(A).  See Mounts, 24 Va. App. at 556, 484 S.E.2d at 142-43.  In affirming this Court's decision and the commission's award, the Supreme Court ruled as follows:

> The "keeping insured" language has been a part of the workers' compensation statutes since the Act was adopted in 1918. . . . [T]he language under scrutiny here means that an employer subject to the Act "must be and remain insured."

> *    *    *    *    *    *    *

> An employer has potential liability for a claim of coal miners' pneumoconiosis for "three years after a diagnosis of the disease" is first communicated to the employee, or for "five years from the date of the last injurious exposure in employment, whichever first occurs. . . ."  Therefore, given the statutory mandate to insure and keep insured its liability, an employer whose employees are susceptible to pneumoconiosis must anticipate that such claims will accrue in the future and must secure its liability for such potential claims as required by § 65.2-801, even when its insurer has been declared insolvent.  When, as here, there has been a failure to do so, the Fund will be liable because the employer has violated its

statutory duty.

<u>Mounts</u>, ___ Va. at ___, ___ S.E.2d at ___ (citations omitted).

Accordingly, we affirm the commission's decision.

<u>Affirmed</u>.