UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:  Judges Petty, Alston and Russell
Argued at Lexington, Virginia

FOUR "O" MINING CORPORATION AND
  AMERICAN MINING INSURANCE COMPANY

v.     Record No. 0083-17-3

LENDY C. DEEL

MEMORANDUM OPINION[*] BY
JUDGE WESLEY G. RUSSELL, JR.
JUNE 27, 2017

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

> Matthew J. Moynihan (Penn, Stuart & Eskridge, on brief), for
> appellants.
>
> Paul L. Phipps for appellee.

Four "O" Mining Corporation and American Mining Insurance Company (collectively "employer") appeal a decision of the Workers' Compensation Commission awarding lifetime benefits to Lendy C. Deel. Specifically, employer argues the Commission erred in concluding that Deel's claim for benefits was not barred by the applicable statute of limitations and in awarding him lifetime wage and medical benefits pursuant to Code § 65.2-504(A)(4). For the reasons that follow, we affirm.

BACKGROUND

"[W]e review the evidence in the light most favorable to [Deel as he was] the prevailing party" before the Commission. R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990).

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

In 1987, Deel sought employment with Double B Mining, Inc. ("Double B"), a mining company unaffiliated with employer. Prior to employing him, Double B required Deel to undergo a chest x-ray and physical examination. After the x-ray and examination had been completed, Double B presented Deel with a Commission-approved waiver form.

The waiver form was two-sided. The front side of the form provided that "[p]ursuant to the provisions of Sec. 65.1-53, the undersigned hereby waives the right to claim compensation benefits covering the following physical conditions: Occupational pneumoconiosis, including but not limited to, coal workers' pneumoconiosis, silicosis and anthrocosis, and any aggravation of any occupational pneumoconiosis."[1] The front side of the form indicated that the parties to the waiver were Deel and Double B and that it was executed on December 19, 1987. The front side of the form was signed by Deel. The front side of the form indicated that it had been approved by the Commission on February 19, 1988.

---

[1] In 1987, Code § 65.1-53 provided, in pertinent part, as follows:

> When an employee or prospective employee, though not incapacitated for work, *is found to be affected by, or susceptible to, a specific occupational disease* he may, subject to the approval of the Industrial Commission, be permitted to waive in writing compensation for any aggravation of his condition that may result from his working or continuing to work in the same or similar occupation for the *same employer*. The Industrial Commission shall approve a waiver for coal worker's pneumoconiosis and silicosis only when presented with X-ray evidence from a physician qualified in the opinion of the Industrial Commission to make the determination and which demonstrates *a positive diagnosis of the pneumoconiosis or the existence of a lung condition which makes the employee or prospective employee significantly more susceptible to the pneumoconiosis.*

(Emphasis added). In a 1991 recodification, the General Assembly repealed Title 65.1 and replaced it with Title 65.2. 1991 Va. Acts ch. 355. Waivers are now governed by Code § 65.2-407, which tracks the language of Code § 65.1-53 with only minor revisions. Because the resolution of the statute of limitations issue in this case turns on Deel's knowledge and actions in 1987, it is appropriate to utilize the provisions of the Act in effect at that time.

The back side of the form, labelled "Physician's Certification," contains preprinted sections and places for additional information to be typed or written in by hand. Under the heading "Physician's Certification," the following language appears: "It is my opinion that the named employee is affected by or susceptible to _____ since history and physical examination indicates: _____." "Pneumoconiosis" was handwritten in the first blank, and "ILO P/Q Prof 0/1" was handwritten in the second blank.

Further down the back side of the form, another preprinted portion reads, "In view of the nature of the employment conditions inherent in the operation of _____[,] I have advised the employer of my opinion so that a waiver may be submitted to you for approval." "Double B Mining, Inc." was typed into the blank. At the bottom of the back side of the form, it was dated December 18, 1987 and signed by a physician.

Deel left the employ of Double B and eventually came to work for employer. He worked for employer from 2001 until May 30, 2012. Deel did not work after he left employer. The parties agree that, based on a September 12 chest x-ray, Deel received a diagnosis of coal workers' pneumoconiosis in November of 2012 and that he was last exposed to coal dust while working for employer.

Based on the November 2012 diagnosis, Deel filed a claim seeking lifetime wage and medical benefits. The employer defended by asserting the statute of limitations and that the evidence did not support an award of lifetime benefits.

Regarding the statute of limitations defense, employer argued that a diagnosis of pneumoconiosis had been communicated to Deel on December 18, 1987 when he signed the waiver form provided to him by Double B. Pursuant to then Code § 65.1-52, a claim for "coal miners' pneumoconiosis" is "forever barred unless a claim be filed . . . within . . . three years after a diagnosis of the disease is first communicated to the employee or within five years from

- 3 -

the date of the last injurious exposure, whichever occurs first[.]"[2]  Deel countered by arguing that

a diagnosis of pneumoconiosis was not communicated to him via the waiver form in 1987, and

therefore, the statute of limitations did not begin to run until his November 2012 diagnosis.

Regarding the award of lifetime wage benefits, employer argued that the credible medical

evidence is insufficient to meet the lifetime wage benefits standard set forth in Code

§ 65.2-504(A)(4); Deel countered by arguing that there was credible evidence that he met the

lifetime benefits standard.

A hearing was held before the deputy commissioner on February 25, 2015.  At the

hearing, the 1987 waiver form was introduced.  Deel testified regarding the waiver form and

what he had been told (or not told) regarding his condition in 1987.  Regarding whether a

diagnosis had been communicated to Deel in 1987, the deputy commissioner summarized Deel's

testimony as follows:

> The claimant said that he had a physical and a chest x-ray
> in 1987 before going to work for Double B Mining, Inc.  The
> claimant testified that he was not told anything about the results of
> either his physical or his chest x-ray and specifically that no one
> told him that he had coal workers' pneumoconiosis or black lung.
> He testified that before being allowed to go to work for Double B,
> he was told to sign multiple documents where indicated by an X
> mark.  There is an X on the front of the waiver document next to
> the claimant's signature.

---

[2] We apply the statute of limitations in effect in 1990, which was the 1987 version, as opposed to the current statute because "the right to interpose the defense of the statute of limitations [is] a substantive property right, constitutionally protected from infringement by retroactive legislation[,]" Kopalchick v. Catholic Diocese of Richmond, 274 Va. 332, 336, 645 S.E.2d 439, 411 (2007) (citing Starnes v. Cayouette, 244 Va. 202, 209, 419 S.E.2d 669, 673 (1992)), and thus, if the claim became barred under the 1987 version of the statute, no subsequent legislative change could remove the bar.  Further, although there have been changes in what is necessary to communicate a diagnosis of coal workers' pneumoconiosis, the current version of the statute, Code § 65.2-406, continues to provide that the time periods in which a claim may be brought are three years after communication of the diagnosis or five years after the last injurious exposure, whichever occurs first.

Noting that he found Deel credible, the deputy commissioner concluded that "the greater weight of the evidence supports a finding of fact that it is more probable than not that the claimant did not receive a communication of diagnosis of occupational disease at the time of his execution of the waiver document in 1987." Accordingly, the deputy commissioner ruled that the claim was not barred by the statute of limitations.

With respect to Deel's condition as of September 2012, doctors offered multiple and differing interpretations of Deel's chest x-ray. Dr. Gregory Fino, a reviewer retained by employer, read the film as negative for coal workers' pneumoconiosis. Dr. Kathleen DePonte and Dr. Thomas Miller read the x-ray as positive for stage one coal workers' pneumoconiosis. Dr. Ralph Shipley, who the deputy commissioner noted "is one of the members of the Commission's Pulmonary Committee," read the x-ray as positive for stage two coal workers' pneumoconiosis. Deel also submitted a "Black Lung Evaluation" performed by Antoine G. Habre, M.D. of Stone Mountain Health Services. Dr. Habre commented that the claimant's chest x-ray "showed profusion 1/0 category A lesion with pleural thickening." He also stated that the claimant's ventilatory studies showed moderate obstruction. Dr. Habre's evaluation explained that

> Mr. Deel has both clinical and legal pneumoconiosis. He also has smoking habit, which contributes significantly to his presence of chronic obstructive pulmonary disease and respiratory symptoms. Chest x-ray did show presence of category A lesion versus pleural thickening. Coal workers['] pneumoconiosis tends to have a progressive course and it will be strongly recommended for him to avoid smoking and further dust exposure. He also had disabling lung disease based on his spirometric measurements, which is due to both his smoking habit and substantially contributed by his work history and exposure to coal mine dust.

At employer's request, the record was held open to obtain a review of the x-ray by the Commission's Pulmonary Committee. The Pulmonary Committee concluded that the film evidenced second stage pneumoconiosis.

- 5 -

From the conflicting medical evidence, the deputy commissioner concluded that Deel suffered from stage two pneumoconiosis as of September 2012. Having made that determination, the deputy commissioner then addressed whether Deel was entitled to lifetime benefits under Code § 65.2-504(A)(4).

The deputy commissioner found that, despite conflicting opinions, the x-ray did not demonstrate "the presence of category A, B, or C large opacities or progressive massive fibrosis . . . ." However, the deputy commissioner also found that Deel's "disease is accompanied by sufficient pulmonary function loss as shown by approved medical tests and standards to render [him] totally unable to do manual labor in a dusty environment" and that Deel had been "instructed by competent medical authority not to attempt to do work in any mine or dusty environment" and was not working. Accordingly, the deputy commissioner concluded that Deel satisfied the requirements for lifetime wage benefits under Code § 65.2-504(A)(4).

Employer sought review by the Commission. On April 27, 2016, the Commission affirmed, "adopt[ing] the well-reasoned [o]pinion of the [d]eputy [c]ommissioner." Employer sought rehearing, which was granted by the Commission. Rather than proceeding on the written statements of the parties, the Commission convened an August 16, 2016 hearing to allow the parties to argue their respective positions.

On December 22, 2016, the Commission issued its final opinion in the matter.[3] "[D]efer[ring] to the [d]eputy [c]ommissioner's credibility determination," the Commission accepted Deel's testimony that he was not "told of the results of either his pre-employment physical or x-ray." Coupled with the other evidence in the case, including the waiver form itself,

---

[3] The August 16, 2016 hearing was held before Commissioners Marshall, Newman, and Williams. Commissioner Williams died on October 11, 2016. Accordingly, the Commission's opinion notes that Deputy Commissioner Gibbs sat by designation of the Chairman pursuant to Code § 65.2-705(D) and that, although she "was not present during oral argument, she did review the recording of the review proceeding."

Deel's testimony led the Commission to conclude "that the evidence fails to establish a communication at the time the claimant executed the waiver in this case." The Commission noted that nothing on the waiver form expressly diagnosed Deel with pneumoconiosis and that "the timing of the examination and the claimant signing his employment documents raises a reasonable question as to whether the certification had been placed on the waiver when signed by the claimant or whether it was added afterwards." In the alternative, the Commission, assuming that "the physician's certification was present when the claimant signed the waiver," held that the waiver form "at best establishes that the claimant was informed he was either affected by [pneumoconiosis] *or susceptible to* [pneumoconiosis]." (Emphasis added). The Commission then noted that a communication that one is susceptible to a disease is not a communication that one has that disease. Having concluded that there had been no communication of a diagnosis of pneumoconiosis to Deel in 1987, the Commission determined that the claim was not barred by the statute of limitations.

Turning to Deel's claim for lifetime wage benefits, the Commission reviewed all of the medical evidence, including the various interpretations of the September 2012 chest x-ray as well as the pulmonary function tests performed by Dr. Habre. Based on this review, the Commission "adopt[ed] the well-reasoned [o]pinion of the [d]eputy [c]ommissioner" as it related to the lifetime wage benefits and awarded those benefits to Deel.

Employer noted its appeal and asserts the following assignments of error:

> 1. The Full Commission erred in finding endorsement of a waiver by the Deel in 1987 did not constitute a communication of a diagnosis coal workers' pneumoconiosis in 1987 sufficient to trigger the running of the statute of limitations under Virginia Code § 65.1-52.

> 2. The Full Commission erred in finding it had jurisdiction to consider that the November 10, 2014 claim for coal workers' pneumoconiosis.

- 7 -

3. The Full Commission erred in finding that the evidence is sufficient to award lifetime benefits under Virginia Code § 65.2-504(A)(4).

ANALYSIS

I. Statute of Limitations

In its first two assignments of error, employer contends that the Commission erred in concluding that Deel's claim was not barred by the statute of limitations.[4] Specifically, employer asserts that a diagnosis of pneumoconiosis was communicated to Deel when Double B presented the waiver form to him in December 1987, and therefore, any claim he has related to pneumoconiosis became barred by the statute of limitations in December 1990.

Whether a claim is barred by the statute of limitations is a question of law that we review *de novo*. Philip Morris USA, Inc. v. Mease, 62 Va. App. 190, 198, 745 S.E.2d 155, 159 (2013). However, in cases such as this, the statute of limitations begins to run when a diagnosis of the occupational disease is first communicated to a claimant and "[w]hether a diagnosis of an occupational disease was communicated and when the communication occurred are factual determinations to be made by the [C]ommission upon the evidence. Upon appellate review, the findings of fact made by the [C]ommission will be upheld when supported by credible evidence." Owens v. York Fire & Rescue, 38 Va. App. 354, 359, 564 S.E.2d 150, 152 (2002) (quoting Uninsured Employer's Fund v. Mounts, 24 Va. App. 550, 558, 484 S.E.2d 140, 144 (1997) (citations omitted), aff'd on other grounds, 255 Va. 254, 497 S.E.2d 464 (1998)); see also Gwaltney of Smithfield, Ltd. v. Peele, No. 2378-09-1, 2010 Va. App. LEXIS 257, *1-2 (Va. Ct. App. June 29, 2010).

---

[4] Employer's argument that the Commission lacked jurisdiction is derived solely from employer's assertion that the claim was barred by the statute of limitations.

- 8 -

Here, Deel unequivocally testified that no diagnosis of pneumoconiosis was communicated to him in 1987. The Commission found Deel to be credible. As we previously have held, "[a]s the trier of fact, the [C]ommission determined the weight of this evidence and the credibility of the witness. Because the [C]ommission accepted [claimant's] testimony [that no diagnosis was communicated], credible evidence supports its finding" that no diagnosis had been communicated. Mounts, 24 Va. App. at 559, 484 S.E.2d at 144.

Recognizing this general rule, employer argues that it should not apply to this case in light of the waiver form Deel signed in 1987. Employer argues that the information on the form, coupled with Deel's signature, conclusively establish that a diagnosis of pneumoconiosis was communicated to Deel in 1987. We disagree.

The front of the waiver form contains no such diagnosis. It does provide that, "pursuant to the provisions of [then Code §] 65.1-53," Deel agreed to waive the right to claim benefits against Double B related to "pneumoconiosis." However, as noted above, then Code § 65.1-53 allowed an employer to seek a waiver when the worker had pneumoconiosis or if the worker was "*susceptible to*" pneumoconiosis. (Emphasis added). Such a finding does not qualify as a diagnosis for the purposes of an occupational disease.[5] Cf. Mounts, 24 Va. App. at 559, 484 S.E.2d at 144 ("An opinion that an employee '*may* have pneumoconiosis,' is not a positive diagnosis of an occupational disease because it 'would indicate that claimant might or might not have had pneumoconiosis.' Such a diagnosis is 'not sufficiently definite to apprise [an employee] that he had contracted the disease.'" (quoting Blue Diamond Coal Co. v. Pannell, 203 Va. 49, 51-52, 122 S.E.2d 666, 668-69 (1961))). Thus, the front of the form does not establish conclusively that Deel had or was told that he had pneumoconiosis in 1987. Rather, it leaves

---

[5] Employer candidly concedes this point, stating on brief that "[i]n order to trigger the running of the statute of limitations, there must be evidence of a positive diagnosis of coal workers' pneumoconiosis."

open the possibility that Deel did not have pneumoconiosis in 1987, but the doctor retained by

Double B determined that he was "susceptible to" developing it, making a waiver appropriate

despite the absence of the disease. Thus, given the Commission's credibility determination,

nothing on the front of the waiver form is sufficient to overcome Deel's testimony that no

diagnosis was communicated to him in 1987.

Turning to the back of the form, employer argues that the physician communicated a

diagnosis when he wrote "[p]neumoconiosis" in the first blank after the preprinted text; however,

this ignores that preprinted text. The preprinted text, which immediately precedes (and thus

modifies) the doctor's listing of pneumoconiosis, reads "[i]t is my opinion that the named

employee is affected by or *susceptible to* _____." (Emphasis added). As with the front

of the form, the statement that Deel has or may be "susceptible to" pneumoconiosis is

insufficient to overcome Deel's testimony that no diagnosis was communicated to him in 1987.

Employer next argues that the back of the form also contains the doctor's opinion that

Deel was "ILO P/Q Prof 0/1" in 1987.[6] Employer argues that under the ILO classification

system, this represents a diagnosis of pneumoconiosis.

Regarding the ILO notation on the back of the form, the Commission first noted that

> [t]he contention that the ILO interpretation was sufficient to trigger
> the statute of limitations begs the larger question of whether the
> diagnosis was communicated to the claimant. We agree that a
> question exists whether the doctor's certification was on the waiver
> when signed by the claimant. The Deputy Commissioner noted the
> claimant's testimony that he traveled directly from the hospital
> where his examination and x-ray were performed to the employer
> where he signed the waiver. Indeed, the timing of the examination

---

[6] "ILO" stands for "International Labour Organization," an agency of the United Nations. The ILO has promulgated a classification system for the interpretation of radiographs related to the diagnosis of pneumoconiosis. See e.g., Guidelines for the Use of the ILO International Classification of Radiographs of Pneumoconioses (http://www.ilo.org/wcmsp5/groups/public/---ed_protect/---protrav/---safework/documents/publication/wcms_168260.pdf) (2011). The General Assembly has recognized the ILO classification system, referencing it in statutes. See Code § 65.1-56.1 (in effect in 1987) and Code § 65.2-504.

and the claimant signing his employment documents raises a
reasonable question as to whether the certification had been placed
on the waiver when signed by the claimant or whether it was added
afterwards.

Given that no evidence was adduced as to whether the physician's certification was placed on the

back of the waiver form before Deel signed it and the requirement that we review the evidence in

the light most favorable to Deel, Mullins, 10 Va. App. at 212, 390 S.E.2d at 788, we cannot say

that a conclusion that the ILO notation was not present when Deel signed the form is inconsistent

with the evidence.

Alternatively, the Commission also found that no diagnosis was communicated to Deel

even if the ILO notation was present on the back of the form when Deel signed it. Specifically,

the Commission opined that even "[a]ssuming the physician's certification was present when the

claimant signed the waiver, it at best establishes that the claimant was informed he was either

affected by a disease or susceptible to the disease." This alternative conclusion of the

Commission is supported by many factors.

First, there is no indication that Deel ever saw the back of the form or read it.[7]

Additionally, there is no indication that, in 1987, Deel or someone similarly situated would have

any appreciation that "ILO P/Q Prof 0/1" means that a person has pneumoconiosis or some other

occupational disease. Although there is no requirement that a communication of a diagnosis of

pneumoconiosis or other occupational disease be stated in a particular way to trigger the running

of the statute of limitations, see Hawks v. Henrico County School Bd., 7 Va. App. 398, 403, 374

---

[7] Employer argues general principles of contract law dictate that Deel be charged with
knowledge of the form whether or not he read it. Principles of contract law would charge Deel
with knowledge of the information contained on the waiver form at the time he signed it in an
action against Double B, the other party to the waiver, but do not dictate that he be charged with
such knowledge regarding an action against anyone else. See Code § 65.1-53 (limiting waiver to
"same employer" as the employer who presented a worker with the waiver). The contract
principles relied upon by employer did not compel the Commission to conclude that a diagnosis
of pneumoconiosis had been communicated to Deel in 1987.

S.E.2d 695, 697 (1988) (holding that it was not necessary for the physician "to utilize precise medical terminology to communicate the existence of occupational disease in order to trigger the obligation to file a claim"), the communication must be "*definite and inform[] the claimant in clear and understandable language* that he or she is suffering from a disease that arises out of and in the course of employment." Via v. Citicorp Mortg., Inc., 10 Va. App. 572, 576, 394 S.E.2d 505, 507 (1990) (emphasis added). We cannot say that the Commission erred in concluding that the inclusion of "ILO P/Q Prof 0/1" on the waiver form was insufficient to meet this standard.

In short, there was evidence to support the Commission's factual conclusion that no diagnosis of pneumoconiosis was communicated to Deel in 1987 and nothing in the record compels the opposite conclusion. Accordingly, even if other evidence was adduced that supports the opposite conclusion, we are required to affirm the Commission's conclusion. Dollar Gen. Store v. Cridlin, 22 Va. App. 171, 177, 468 S.E.2d 152, 155 (1996) (holding that "[t]he fact that contrary evidence may appear in the record 'is of no consequence if there is credible evidence to support the [C]ommission's finding'" (quoting Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991))).

## II. Lifetime Wage Benefits

In its final assignment of error, employer argues that the evidence was insufficient to support the Commission's award of lifetime wage benefits to Deel. Specifically, employer argues that, because the Commission adopted the x-ray interpretation rendered by its Pulmonary Committee, it could not accept medical opinions on other issues from other experts who did not agree with the Pulmonary Committee's interpretation of the x-ray.

The award of lifetime wage benefits in this case is governed by Code § 65.2-504(A)(4), which provides that a claimant shall receive lifetime wage benefits[8]

> [f]or coal worker's pneumoconiosis medically determined to be A, B or C under the I.L.O. classifications *or* which involves progressive massive fibrosis, *or* for any stage of coal worker's pneumoconiosis when it is accompanied by sufficient pulmonary function loss as shown by approved medical tests and standards to render an employee totally unable to do manual labor in a dusty environment and the employee is instructed by competent medical authority not to attempt to do work in any mine or dusty environment and if he is in fact not working . . . .

(Emphasis added).[9]

Although employer adduced an expert opinion that Deel did not have pneumoconiosis, it does not challenge the Commission's conclusion that Deel has second stage pneumoconiosis. Such a finding is amply supported by the Commission's accepting the chest x-ray review of the Commission's Pulmonary Committee, a review that was done at employer's request. Likewise, employer does not challenge the Commission's conclusion that the chest x-ray did not evidence class A, B, or C opacities or progressive massive fibrosis, the existence of either of which would have entitled Deel to lifetime wage benefits.

---

[8] Pursuant to Code § 65.2-504(A)(4), a claimant entitled to lifetime wage benefits receives "66 2/3 percent of his average weekly wage . . . during the three years prior to the date of filing of the claim, up to 100 percent of the average weekly wage of the Commonwealth . . . for his lifetime without limit as to the total amount."

[9] By separating the qualifying conditions for lifetime wage benefits with the conjunction "or," the General Assembly mandated that, if a claimant establishes one of the conditions, he is entitled to lifetime wage benefits. See, e.g., Sansom v. Board of Supervisors, 257 Va. 589, 595, 514 S.E.2d 345, 349 (1999) (holding that use of "or" in an ordinance created two categories, either of which was sufficient to bring the matter within the ordinance's purview); Harris v. DiMattina, 250 Va. 306, 314-15, 462 S.E.2d 338, 341 (1995) (interpreting the requirements of Code § 8.01-1 in disposing of a plea of the statute of limitations and noting that "[s]ince these two circumstances are worded in the disjunctive, if either circumstance applies, Harris's cause of action is not time barred").

The absence of class A, B or C opacities and progressive massive fibrosis, however, does not render Deel ineligible for lifetime wage benefits. A worker is still entitled to lifetime wage benefits if he is not working and his pneumoconiosis results in "sufficient pulmonary function loss as shown by approved medical tests and standards to render an employee totally unable to do manual labor in a dusty environment and the employee is instructed by competent medical authority not to attempt to do work in any mine or dusty environment . . . ." Code § 65.2-504(A)(4).

Here, it is clear that Deel was no longer working and that he had been informed that he was "unable to do manual labor in a dusty environment" and that he should "not attempt to do work in a[] mine or dusty environment."[10] Because there was evidence in the record to support these findings, the Commission's conclusion is binding upon us on appeal. Ga. Pac. Corp. v. Dancy, 17 Va. App. 128, 135, 435 S.E.2d 898, 902 (1993). Thus, if credible medical evidence established that Deel suffered from "sufficient pulmonary function loss as shown by approved medical tests and standards to render an employee totally unable to do manual labor in a dusty environment," Code § 65.2-504(A)(4), he is entitled to lifetime wage benefits.

Such medical evidence was provided by Dr. Habre's report, which noted that Deel suffered "disabling lung disease based on his spirometric measurements . . . ."[11] The Commission determined that the spirometry testing referenced by Dr. Habre demonstrated the

---

[10] The deputy commissioner, whose conclusions on this issue were adopted by the Commission, "conclude[d] that Dr. Habre's report is sufficient to support findings of fact that it is more probable than not that the claimant's CWP is 'accompanied by' sufficient pulmonary function loss to render him totally unable to do manual labor in a dusty environment and that he has been instructed by competent medical authority not to attempt such work."

[11] Spirometry is a specific pulmonary function test designed to obtain a "[m]easurement of air flow and lung volumes." Taber's Cyclopedic Medical Dictionary 2183 (22d ed.).

- 14 -

required "pulmonary function loss." Accordingly, the Commission's factual conclusion in this regard is binding on appeal. Dancy, 17 Va. App. at 135, 435 S.E.2d at 902.

Employer argues that the Commission was required to reject Dr. Habre's results and conclusions regarding spirometry because his report accepted that there was an A category opacity on Deel's chest x-ray, a conclusion not shared by the Pulmonary Committee or the Commission. However, nothing about the differing interpretations of the x-ray negates the spirometry findings of Dr. Habre. The Commission was free, as fact finder, to accept the chest x-ray opinions of the Pulmonary Committee and the spirometry findings of Dr. Habre. Cf. English v. Commonwealth, 43 Va. App. 370, 371, 598 S.E.2d 322, 323 (2004) (A "trier of fact is not required to accept a party's evidence in its entirety, but is free to believe or disbelieve, in whole or in part, the testimony of any witness." (citations omitted)). Because there was credible medical evidence to support the Commission's determination regarding pulmonary function loss, its decision in this regard is binding on appeal.

CONCLUSION

There is sufficient evidence in the record to support the Commission's conclusions that Deel's claim was not barred by the statute of limitations and that his condition supported the award of lifetime wage benefits. Accordingly, the decision of the Commission is affirmed.

Affirmed.