COURT OF APPEALS OF VIRGINIA


Present:   Judges Clements, Kelsey and Beales
Argued at Richmond, Virginia


TRICORD HOMES, INC. AND
  WCAMC CONTRACTORS GROUP
  SELF-INSURANCE ASSOCIATION

                                                    MEMORANDUM OPINION[*] BY
v.      Record No. 0863-08-2                    JUDGE JEAN HARRISON CLEMENTS
                                                       DECEMBER 30, 2008

ARMISTEAD MARCUS SMITH


                FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Angela F. Gibbs (Rachel A. Riordan; Midkiff, Muncie & Ross, P.C.,
            on brief), for appellants.

            No brief or argument for appellee.


        Tricord Homes, Inc. and WCAMC Contractors Group Self-Insurance Association

(collectively, employer) appeal a decision of the Workers' Compensation Commission

(commission) granting medical benefits to Armistead Marcus Smith (claimant).  Employer

contends the commission erred in (1) finding claimant's left knee condition was a compensable

consequence of his injury by accident, (2) concluding the statute of limitations set forth in Code

§ 65.2-708(A) did not bar medical benefits pertaining to claimant's left knee condition, and

(3) finding claimant's current right knee condition was causally related to the injury by accident.

For the reasons that follow, we affirm the commission's decision in part, and reverse it in part.

        As the parties are fully conversant with the record in this case and because this

memorandum opinion carries no precedential value, this opinion recites only those facts and

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

## I. BACKGROUND

On appeal, "we view the evidence in the light most favorable to [claimant], the party prevailing before the commission." Great Eastern Resort Corp. v. Gordon, 31 Va. App. 608, 610, 525 S.E.2d 55, 56 (2000). On October 5, 1999, while working for employer connecting electrical components on a dishwasher, claimant suffered an injury by accident when he stood up from an awkward seated position and felt his right knee pop and lock-up. As a result of the accident, claimant sustained a lateral meniscus tear to his right knee. Subsequently, the commission awarded claimant temporary total and permanent partial disability benefits in connection with the right knee injury. The commission also granted claimant medical benefits "for as long as necessary." Claimant last received disability benefits on November 15, 2002.

Immediately after the injury, claimant sought medical treatment with Dr. John S. Moss, an orthopedist. On October 11, 1999, Dr. Moss performed an arthroscopy and lateral meniscus repair on claimant's right knee. On four different occasions following claimant's surgery, Dr. Moss reported claimant was slowly progressing and improving. On January 26, 2000, Dr. Moss reported claimant had an increase in lateral joint pain. Dr. Moss opined that the meniscus had not healed, and indicated he may repeat the MRI, repeat the scope, and do a partial lateral meniscectomy. On February 3, 2000, Dr. Moss indicated he would release claimant to light-duty work.

In a report dated March 24, 2000, Dr. Moss noted claimant continued to have "trouble with ladders and squatting down." On June 13, 2000, Dr. Moss reported claimant developed "nerve type" symptoms associated with his lateral meniscus pain. On August 12, 2000, Dr. Moss assessed that claimant reached his maximum medical improvement.

On May 16, 2001, Dr. Moss reported claimant continued to have trouble with his right knee. Dr. Moss further noted claimant suffered a constant nerve condition on the lateral aspect of his knee and noted that claimant could have "peroneal nerve entrapment." On July 27, 2001, Dr. Moss performed a second surgery to resolve the "peroneal nerve entrapment." To determine the status of the nerve condition, Dr. Moss referred claimant to Dr. Dale W. Pcsolyar for an evaluation of his peroneal nerve.

In a March 16, 2002 letter, Dr. Moss reported he had been treating claimant "for quite some time secondary to an injury to his right leg." Dr. Moss indicated claimant suffered from a "persistent chronic pain syndrome secondary to his nerve injury . . . which entitl[ed] him to [a] 25[%] permanent partial disability rating" of his right knee.

On December 11, 2003, claimant saw Dr. Brian T. McDermott, a different orthopedist. In a report, Dr. McDermott noted claimant's right knee medical history and his treatment with Dr. Moss. Dr. McDermott also opined that claimant experienced "continued nerve pain" in his right leg.

Claimant returned to Dr. Moss on December 9, 2004, seeking an evaluation of both knees. Dr. Moss noted claimant's right knee had minimal lateral joint tenderness and mild medial joint tenderness. Reporting claimant "had many months of modified weight[ ]bearing on the right knee," Dr. Moss concluded the right knee condition caused increased pain, wear, and tear to claimant's left knee. Dr. Moss noted claimant sustained an injury to his left knee when he was four years old. Dr. Moss also indicated claimant would continue treatment with Dr. Paul Ware for his pain management.

In reports dated January 27, 2005, March 15, 2005, and June 14, 2005, Dr. Ware noted claimant had right knee pain with neuropathic irritation that was "likely secondary to [the] superficial peroneal nerve injury."

On July 18, 2005, while working for employer, claimant walked from his car across construction gravel and up the stairs to his desk. During the walk, he experienced pain towards the middle of his right knee. The next day, Dr. Moss examined claimant. Dr. Moss reported claimant was "experiencing increasing pain" in his right knee over the past week and "he ha[d] difficulty ambulating [and] difficulty straightening his knee out." Dr. Moss's report also indicated claimant continued to experience the nerve condition along the lateral meniscus and that he sustained "medial joint line pain" as well. Dr. Moss further assessed that claimant's left knee pain was "likely secondary to it becoming the workhorse or dominant knee."

Following an MRI indicating a small tear in claimant's right knee medial meniscus, Dr. Moss performed a third surgery on August 24, 2005. During the surgery, however, Dr. Moss discovered the medial meniscus was "intact." Dr. Moss further found a lateral meniscus tear and conducted a partial lateral meniscectomy. Following the surgery, Dr. Moss reported claimant was progressing and recovering well, and released him to light-duty on September 6, 2005.

In September 2005, claimant returned to Drs. Ware and Pcsolyar. Both doctors reported claimant continued to suffer from nerve pain associated with his right knee.

On January 4, 2006, claimant returned to Dr. Ware. Reporting claimant had "bilateral knee osteoarthritis," Dr. Ware referred claimant to Dr. Joseph Ferguson for treatment of his pain management.

On January 5, 2006, claimant resigned from employment with employer. On February 21, 2006, Dr. Moss released claimant to full-duty work.

On June 6, 2007, claimant filed a claim seeking additional temporary total disability benefits in connection with his October 5, 1999 injury by accident. Specifically, claimant sought compensation for lost wages when his right knee condition caused his absence from work with employer, and also sought continued medical benefits for his right knee condition. Pursuant to

Code § 65.2-708(A),[1] he further claimed his left knee condition was a change-in-condition, constituting a compensable consequence of his injury by accident.

In a letter dated August 15, 2007, Dr. Ferguson clarified that although an MRI following the July 18, 2005 incident showed a medial meniscus tear in claimant's right knee, his pain remained in the area of the lateral meniscus. Dr. Ferguson further noted claimant's ongoing right knee pain originated with the October 5, 1999 injury by accident. In addition, Dr. Ferguson reported claimant's right knee condition caused premature left knee arthritis.

On September 12, 2007, the deputy commissioner conducted a hearing on claimant's June 6, 2007 application. Finding claimant's application was filed more than two years after November 15, 2002, the last day for which compensation was paid, the deputy commissioner determined the wage loss benefits were time barred pursuant to Code § 65.2-708(A). In addition, the deputy commissioner found claimant's right knee symptoms were causally related to the injury by accident, found no new injury occurred on July 18, 2005, and found claimant was entitled to ongoing medical treatment for his right knee. The deputy commissioner further concluded claimant's left knee condition was a compensable consequence of the injury by accident. Implicitly determining that Code § 65.2-708(A) did not operate to time bar medical

---

[1] Code § 65.2-708(A), provides, in pertinent part, as follows:

> Upon its own motion or upon the application of any party in interest, on the ground of a change[-]in[-]condition, the Commission may review any award and on such review may make an award ending, diminishing or increasing the compensation previously awarded . . . . No such review shall be made after twenty-four months from the last day for which compensation was paid, pursuant to an award under this title . . . .

Code § 65.2-101 provides that a change-in-condition is "a change in physical condition of the employee as well as any change in the conditions under which compensation was awarded, suspended, or terminated which would affect the right to, amount of, or duration of compensation."

benefits on a compensable consequence claim, the deputy commissioner granted claimant's application for medical benefits for his left knee.

Upon review, the commission affirmed the deputy commissioner's findings pertaining to the right knee. Relying on Berglund Chevrolet, Inc. v. Landrum, 43 Va. App. 742, 601 S.E.2d 693 (2004), the commission also agreed that Code § 65.2-708(A) time barred claimant's application for wage loss benefits. The commission further noted, however, that employer's liability did not end because the claimant failed to file a claim for medical benefits in accord with the time limitations of Code § 65.2-708(A). Pursuant to Code § 65.2-603(A)(1), the commission concluded that employer was liable for all of the medical consequences for "'as long as necessary' after they develop, as long as they [were] a direct result of the original compensable accident." Thus, the commission upheld the award of medical benefits for claimant's left knee.

This appeal by employer followed.

## II. ANALYSIS

On appeal, employer challenges the commission's decision on three grounds. First, employer contends the commission erred in finding claimant's left knee condition was a compensable consequence of his injury by accident. Additionally, employer claims that even if we conclude the left knee condition was a compensable consequence of his injury by accident, the claim for medical benefits pertaining to his left knee was time barred by Code § 65.2-708(A). Finally, employer asserts claimant's current right knee condition was not causally related to the injury by accident, but resulted from a new accident on July 18, 2005. We conclude credible evidence supports the commission's determination that the left knee was a compensable consequence of the injury by accident, but we hold the claim for medical benefits was time barred by Code § 65.2-708(A). We also conclude credible evidence supports the commission's finding that the current right knee condition was causally related to the injury by accident.

- 6 -

In reviewing the commission's judgment, we view the evidence in the light most favorable to claimant, the prevailing party below. See R. G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990). The commission's legal determinations are not binding on appeal and will be reviewed *de novo*. Robinson v. Salvation Army, 20 Va. App. 570, 572, 459 S.E.2d 103, 104 (1995). The factual findings of the commission, however, are conclusive and binding on appeal if supported by credible evidence in the record. Southern Iron Works, Inc. v. Wallace, 16 Va. App. 131, 134, 428 S.E.2d 32, 34 (1993).

Under settled principles of appellate review,

> [t]he commission's determination of causation is a finding of fact. American Filtrona Co. v. Hanford, 16 Va. App. 159, 165, 428 S.E.2d 511, 515 (1993). . . . "The fact that there is contrary evidence in the record is of no consequence if there is credible evidence to support the commission's finding." Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991). . . . "Likewise, the [c]ommission's conclusions upon conflicting inferences, legitimately drawn from proven facts, are equally binding on appeal." Watkins v. Halco Eng'g, Inc., 225 Va. 97, 101, 300 S.E.2d 761, 763 (1983). "In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses." Wagner Enters., Inc., 12 Va. App. at 894, 407 S.E.2d at 35.

Henrico County Sch. Bd. v. Etter, 36 Va. App. 437, 443-44, 552 S.E.2d 372, 375 (2001).

Employer first contends the commission erred in finding claimant's left knee condition constituted a compensable consequence of his injury by accident. In support of this contention, employer claims the medical reports declaring the injury by accident caused the left knee condition were based upon an incomplete medical history. We disagree.

Under the doctrine of compensable consequences, "'[w]hen the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct.'" Bartholow Drywall Co.

v. Hill, 12 Va. App. 790, 793-94, 407 S.E.2d 1, 3 (1991) (quoting Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 283, 348 S.E.2d 876, 879 (1986)).  Thus, "a covered employee who suffers a second injury that bears a sufficient 'causal connection' to the first injury is entitled to the protections of the [Virginia Workers' Compensation] Act for the second injury, as well."  Farmington Country Club, Inc. v. Marshall, 47 Va. App. 15, 22, 622 S.E.2d 233, 237 (2005) (citing Amoco Foam Prods. Co. v. Johnson, 257 Va. 29, 32, 510 S.E.2d 443, 444 (1999)).  In determining whether the second injury bears a sufficient "causal connection" to the first injury, the issue is "essentially one of whether the medical evidence proves a causal connection between the primary injury and the subsequent occurrence."  Williams Indus., Inc. v. Wagoner, 24 Va. App. 181, 188, 480 S.E.2d 788, 791 (1997).

Applying these principles to the circumstances of this case, we conclude credible evidence supports the commission's finding that claimant's left knee condition was a compensable consequence of his injury by accident.

The medical record reflects that on two occasions, Dr. Moss declared claimant's right knee injury by accident caused the left knee condition.  Specifically, Dr. Moss reported that claimant modified his weight bearing on his right knee, causing his left knee to become the "workhorse" or the "dominant knee."  On another occasion, Dr. Ferguson noted that claimant's right knee injury caused premature left knee arthritis.  Thus, the commission could reasonably conclude that the left knee condition was not a new injury, but one that developed over time because the injury to claimant's right knee forced him to overuse his left knee.  Moreover, we reject employer's claim that the medical reports were based upon an incomplete medical history.  To the contrary, in the December 9, 2004 report, Dr. Moss noted claimant sustained an injury to his left knee when he was four years old.  It is clear, therefore, that Dr. Moss understood claimant's left knee medical history before he determined that the right knee condition caused

the left knee condition. Accordingly, we conclude the commission did not err in finding claimant's left knee condition was a compensable consequence.

Having determined the commission properly found claimant's left knee condition was a compensable consequence of the injury by accident, we next address employer's contention that claimant's medical benefits were time barred pursuant to Code § 65.2-708(A). In finding claimant's left knee condition was a compensable consequence of the injury by accident, the commission determined the left knee condition was a change-in-condition. Pursuant to Code § 65.2-101, a change-in-condition is "a change in physical condition of the employee as well as any change in the conditions under which compensation was awarded, suspended, or terminated which would affect the right to, amount of, or duration of compensation." Accordingly, the commission applied the change-in-condition statute of limitations contained in Code § 65.2-708(A) and found claimant's wage loss benefits were time barred. Relying on Code § 65.2-603(A)(1),[2] however, the commission granted claimant medical benefits for "'as long as necessary' after they develop, as long as they [were] a direct result of the original compensable accident." Thus, the commission found the statute of limitations in Code § 65.2-708(A) did not operate to bar medical benefits for claimant's left knee condition.[3] In making that determination, employer contends the commission disregarded this Court's decision in Berglund Chevrolet, Inc. v. Landrum, 43 Va. App. 742, 601 S.E.2d 693 (2004). We agree with employer.

---

[2] Code § 65.2-603(A)(1) provides, in pertinent part, that "[a]s long as necessary after an accident, the employer shall furnish or cause to be furnished, free of charge to the injured employee, a physician . . . and such other necessary medical attention."

[3] As noted by employer, the commission's decision in this case is inconsistent with its application of Code § 65.2-708(A) in Brown v. Ruby Tuesday, Inc., No. 215-94-55, 2007 VA Wrk. Comp. LEXIS 726 (June 11, 2007) (applying the statute of limitations set forth in Code § 65.2-708(A) to a change-in-condition application seeking medical benefits for depression).

In Berglund, the employee suffered a compensable back injury. Berglund, 43 Va. App. at 747, 601 S.E.2d at 695. Soon after the back injury, the employee experienced "severe" and "constant" pain in his private area. Id. After doctors diagnosed the employee suffered a sexual dysfunction as a consequence of his workplace injury, the employee filed a claim seeking medical benefits in the form of payment for a Viagra prescription. Id. at 748, 601 S.E.2d at 696. Finding his sexual dysfunction was a compensable consequence, the commission awarded the employee medical benefits. Id. at 749, 601 S.E.2d at 696. On appeal, the employer contended the sexual dysfunction was a new injury requiring the application of the statute of limitations set forth in Code § 65.2-601.[4] Id. We disagreed, and concluded the commission properly found the employee's condition was a change-in-condition. Id. at 754, 601 S.E.2d at 699. Accordingly, we applied the change-in-condition statute of limitations contained in Code § 65.2-708(A), and determined the employee timely filed his claim for medical benefits. Id. at 754-55, 601 S.E.2d at 699.

In applying Code § 65.2-708(A) to the circumstances in Berglund, we implicitly concluded that a claim for medical benefits on a change-in-condition application, like a claim for wage loss benefits, must comply with the statute of limitations contained in Code § 65.2-708(A). Inherent in that conclusion, therefore, is the determination that the language in Code § 65.2-603(A)(1), granting medical benefits for "as long as necessary after the accident," is not implicated on a change-in-condition claim unless the claimant validly files the change-in-condition application within the statute of limitations set forth in Code § 65.2-708(A). Cf. Bartholow, 12 Va. App. at 797, 407 S.E.2d at 5 (applying the statute of limitations contained in Code § 65.1-87, the predecessor of Code § 65.2-601, on a claim for medical benefits involving

---

[4] Code § 65.2-601 provides, in relevant part, that "[t]he right to compensation under this title shall be forever barred, unless a claim be filed with the Commission within two years after the accident."

a new injury causally related to the injury by accident). In accord with Berglund, therefore, we conclude, that because claimant did not comply with the statute of limitations contained in Code § 65.2-708(A), his claim for medical benefits pertaining to his left knee condition was time barred.

Employer further contends claimant's current right knee condition was not causally related to the injury by accident. To support this contention, employer relies upon the fact that claimant filed a separate claim for benefits in connection with his right knee, alleging that a new accident occurred on July 18, 2005.[5] We disagree with employer's contention.

Here, in conjunction with the initial award to claimant for the October 5, 1999 injury by accident to his right knee, the commission granted medical benefits for as long as necessary. Accordingly, claimant filed the June 6, 2007 application, in part, to receive the continued medical benefits previously awarded for his right knee condition. To prevail on this claim, however, claimant bore the burden of proving his current right knee condition was causally related to the injury by accident. See Volvo White Truck Corp. v. Hedge, 1 Va. App. 195, 199-200, 336 S.E.2d 903, 906 (1985) (affirming an award of medical expenses for an eye examination and eyeglasses where the employee proved a subsequent eye condition was causally related to the injury by accident sustained to the employee's head).

We conclude credible evidence supports the commission's finding that claimant's current right knee condition was causally related to the injury by accident. The medical record reflects that claimant's injury by accident involved a lateral meniscus tear to his right knee. Following the first remedial surgery, Dr. Moss opined that claimant's lateral meniscus tear was not

---

[5] VWC File No. 225-05-42, claimant's separate application filed in connection with the July 18, 2005 incident, was not on the hearing docket for September 12, 2007. At the hearing, the deputy commissioner noted he would review the information claimant filed in support of VWC File No. 225-05-42.

resolved. Later, Dr. Moss declared claimant developed a nerve condition and suffered from nerve entrapment in his right knee. After a second surgery in 2002, to resolve the nerve condition, Dr. Moss reported claimant suffered from a "persistent chronic pain syndrome secondary to his nerve injury" involving his right knee. In 2003, Dr. McDermott also reported he experienced "continued nerve pain" in his right leg. When claimant returned to Dr. Moss in December 2004, Dr. Moss noted claimant continued to have chronic pain from the nerve injury. In January, March, and June 2005, Dr. Ware declared that claimant had right knee pain with neuropathic irritation. In July 2005, Dr. Moss performed a third surgery on claimant to resolve a lateral meniscus tear. From this evidence, the commission could determine that claimant's lateral meniscus tear and associated nerve condition were not resolved despite several years of treatment involving three surgeries and diagnoses from multiple doctors of orthopedics, neurology, and pain management. Hence, we conclude the commission did not err in finding the current right knee condition was a continuation of his injury by accident.

It logically follows, therefore, that the current right knee condition was not a new injury associated with the July 18, 2005 incident. "Whether an employee has suffered an 'injury by accident' is a mixed question of law and fact." Goodyear Tire & Rubber Co. v. Harris, 35 Va. App. 162, 167, 543 S.E.2d 619, 621 (2001) (quoting R & R Constr. Corp. v. Hill, 25 Va. App. 376, 378-79, 488 S.E.2d 663, 664 (1997)). "Where reasonable inferences may be drawn from the evidence in support of the commission's factual findings, they will not be disturbed by this Court on appeal." Hawks v. Henrico County Sch. Bd., 7 Va. App. 398, 404, 374 S.E.2d 695, 698 (1988).

Here, after the July 18, 2005 incident, claimant's condition manifested as nothing more than a continuation of the same right knee lateral meniscus injury. In fact, on July 19, 2005, Dr. Moss reported that claimant "had been experiencing increasing pain" in his right knee over

- 12 -

the past week, and had difficulty ambulating and straightening his knee. Dr. Moss also indicated that claimant continued to experience the nerve condition along "the lateral aspect." Although Dr. Moss initially believed claimant suffered a medial meniscus tear, a third surgery revealed the medial meniscus was "intact." Instead, Dr. Moss conducted a partial lateral meniscectomy after he discovered during the surgery that claimant suffered from a lateral meniscus tear.

This conclusion is buttressed by Dr. Ferguson's letter in which he explained that, although an MRI following the July 18, 2005 incident showed a medial meniscus tear in claimant's right knee, his pain remained in the area of the lateral meniscus. Dr. Ferguson further noted that claimant's ongoing right knee pain originated with the October 5, 1999 injury by accident. Thus, the commission could reasonably conclude that the current right knee condition was not a new injury associated with the July 18, 2005 incident.

### III. CONCLUSION

For these reasons, we affirm the commission's decision that the left knee condition was a compensable consequence of the injury by accident, reverse the commission's decision that Code § 65.2-708(A) did not operate to time bar medical benefits for claimant's left knee condition, and affirm the commission's decision that the current right knee condition causally relates to the injury by accident.

Affirmed in part and<br>reversed in part.